[Civ. No. 18701. Fourth Dist., Div. One. Dec. 22, 1980.]

RITA RHYNE, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE NORTH COUNTY
JUDICIAL DISTRICT OF SAN DIEGO COUNTY,
Defendant and Appellant.

**COUNSEL**

Tom Adler for Plaintiff and Appellant.

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Anthony Albers, Deputy County Counsel, for Defendant and Appellant.

**OPINION**

**STANIFORTH, J.**—Nineteen-year-old Rita Rhyne and her six-month-old infant appeared before David Walker, judge, Municipal Court for the North County Judicial District (Municipal Court) at its morning misdemeanor arraignment session. Without advice of or waiver of rights, without benefit of counsel, Rhyne pleaded guilty to petty theft—a first offense. Judge Walker immediately jailed the woman and child. After four hours of confinement, Judge Walker stayed the jail sentence three days and ordered Rhyne to report to the county jail to serve the balance of her sentence. Rhyne obtained counsel and sought a writ of habeas corpus and writ of mandamus on behalf of herself and others similarly situated with respect to denials of fundamental constitutional rights when in attendance at the Municipal Court arraignment sessions presided over by Judge Walker. Walker was served by mail

(Code Civ. Proc., § 1013a, subd. (3)) by the superior court clerk with Rhyne's petition for writ of habeas corpus.[1] By agreement of the parties, Judge Walker was excused from the proceeding[2] and the Municipal Court retained as the party respondent.

After a factual hearing, the trial court issued its peremptory writ of mandate commanding the Municipal Court "to furnish a counseling attorney or attorneys to any persons charged with crimes which could result in confinement, prior to and during their appearance in your court." After further contested hearings, extensive findings of fact were made followed by a judgment ordering the Municipal Court to furnish counsel on the exact terms and conditions set forth in the peremptory writ. The trial court denied Rhyne's attorney's (Tom Adler) request (Code Civ. Proc., § 1021.5) for attorney fees. The Municipal Court appeals the judgment granting the writ of mandate. Rhyne appeals the order denying attorney fees.

## FACTS

The factual matrix underlying the action is detailed in the trial court's findings of fact. They disclose a gross, consistent pattern of denial of most fundamental constitutional rights to persons appearing before Judge Walker at the Municipal Court misdemeanor arraignment sessions.

The North County Municipal Court conducted misdemeanor arraignments 3 mornings a week (9 a.m. to 12 p.m.) at which there were up to 100 defendants present. Defenders Program of San Diego, Inc. (Defenders) provided legal assistance to indigents charged with crimes in San Diego County. Before July 1, 1978, they were employed by the North County Judicial District to counsel with defendants before and during their appearances at the misdemeanor arraignment sessions. The superior court found the counseling attorneys performed the following functions: (1) advising all persons, before their court appearance, of their constitutional rights; of the elements of the crimes with which they were charged; of the defenses to the charged crimes and of technical defenses such as pleas in abatement and of possible constitutional issues applicable to their case; (2) assisting the court in determining which persons were eligible for court appointed counsel by discussing defen-

---

[1] John Duffy, Sheriff of San Diego County, was also named as a respondent and served in the same fashion.
[2] Judge Walker has since been defeated in his bid for reelection.

dants' financial situations with them and helping them fill out the necessary forms; (3) explaining contingencies, consequences that could follow from the entry of a guilty plea such as the effect of certain driving convictions on a defendant's Department of Motor Vehicle records or in crimes involving moral turpitude, the potential employment and licensing difficulties which could occur, and advising entry of a guilty plea where appropriate; and (4) engaging in plea bargaining with the district attorney's office and thus aiding in resolution of cases at an early stage of the proceedings. In sum, Defenders performed the ordinary prearraignment duties of defense counsel.

Before July 1, 1978, Defenders had on several occasions filed, or threatened to file, writs challenging various procedures employed in Judge Walker's trial courtroom which Defenders felt deprived defendants of their constitutional rights. When, on July 1, 1978, Judge Walker assumed the role of presiding judge of the North County Judicial District, he immediately terminated Defenders' counseling services in face of Defenders' offer to provide the services at no cost to the court.

Thereafter persons charged with misdemeanors who appeared for morning arraignment reported to a clerk's desk outside the courtroom, where they were asked to initial and sign an advisal of constitutional rights form. Those who told the clerk of their desire to plead guilty were given a separate form which recited a waiver of counsel and an admonition of the possible consequences of a guilty plea. The forms utilized for the admonition were either incorrect or incomplete in terms of setting forth the possible penalties and other consequences of a plea of guilty. From the time a defendant was furnished with the forms until the actual appearance before the judge, a time lapse of up to three hours could occur.

The clerks furnishing the forms did not review the forms with the defendants nor did they explain any of the language.

The superior court found persons of average intelligence, without legal assistance, were in many instances unable to comprehend the full meaning and legal significance of the words contained in these forms.

Any defendant appearing at morning arraignment who wished to consult with counsel before entering the courtroom was advised (1) no

attorney was available to consult with them, or (2) they could return in the afternoon when a counseling attorney would be available. Although several thousand persons were arraigned during the time period in question there was no evidence of anyone returning in the afternoon to consult Defenders or any other attorneys.

Those defendants who arrived in the courtroom on time for the misdemeanor arraignment session received a mass admonishment by the court which included a statement that they "may be entitled to counsel in serious matters." Late arrivals (such as Rhyne) may have been arraigned without receiving any admonishment by the court.

The general procedure when a defendant's case was called, was to call the defendant forward to stand with a group of other people charged with similar offenses. The entire group was usually questioned by the court en masse. If a defendant requested the assistance of court-appointed counsel, he was told to fill out an application and his case would then trail until the end of the calendar or a pause in the proceedings.

The superior court found many defendants entered guilty pleas in misdemeanor arraignment court who: (1) had not been adequately advised of their constitutional rights by the court; (2) had not made an on the record waiver of their constitutional rights; (3) had not been properly advised of the consequences of their guilty pleas; (4) had been coerced into pleading guilty by threats of having bail set and being remanded to custody if they persisted in pleading not guilty; (5) had pleaded guilty although they denied guilt and there was no factual basis for their plea; (6) had been sentenced to time in custody based on uniform policies of the court as to certain offenses which failed to take into consideration each individual's particular circumstances; and (7) had entered pleas to reduced charges as a result of plea bargaining between the court and the defendant.

The superior court, based upon these findings of fact, concluded the procedures employed by the Municipal Court "do not comport to the minimal requirement of due process of law and deprive defendants of effective assistance of counsel" as guaranteed by both the California and United States Constitutions.

## CONTENTIONS

The Municipal Court asserts (1) lack of jurisdiction of the superior court because of "lack of personal service"; (2) the trial court erred in denying the Municipal Court an opportunity to file a formal answer and have a full hearing thereon; (3) the trial court erred in using mandamus as a remedy; and (4) Rhyne did not have sufficient "beneficial interest" to maintain the jurisdiction of the superior court.

Rhyne's appeal asserts error in the denial of Adler's request for attorney fees, arguing the Municipal Court as a "public entity" is *not* exempt from an award of attorney fees under Code of Civil Procedure section 1021.5.

## DISCUSSION

### I

Our task begins with the threshold contention of lack of jurisdiction. The Municipal Court asserts personal jurisdiction was lacking because the petition for writ of habeas corpus, the order on the petition, the writ of habeas corpus, and the amended petition for class action writ of habeas corpus and/or writ of mandamus, with its supporting points and authorities, were not personally served. It is further argued, assuming personal service was not required, the superior court never acquired personal jurisdiction over the Municipal Court with regard to the writ of mandate proceedings since the Municipal Court was never served with an alternative writ, an order to show cause or a noticed motion sufficient to bring it within the jurisdiction of the superior court.

These arguments overlook critical, decisive facts. The Municipal Court, after appearing specially, moved for a continuance of the September 26, 1978, hearing, after the superior court ruled against its jurisdictional contentions. The continuance was denied. Following this rebuff, the proceedings continued with the presence and participation by the Municipal Court's counsel. The Municipal Court then demurred (Oct. 3, 1978) to the amended petition for class action writ of habeas corpus and/or writ of mandamus and thereafter sought to file an answer (Oct. 5, 1978).

The filing of a demurrer as well as a motion to continue constitutes a general appearance in an action which confers jurisdiction upon the court. In *Knoff* v. *City etc.* (1969) 1 Cal.App.3d 184, 201 [81

Cal.Rptr. 683], the court stated: "Appellants complain of alleged irregularity in the service of process (i.e., of the trial court's alternative writ of mandate) upon Wolden personally. The record, however, shows that his attorney appeared in the trial court on the alternative writ's return date (March 7, 1966) and moved for a continuance of the action. This was a general appearance, by Wolden, which—apart from the validity of personal service of process—conferred jurisdiction upon the trial court to act with reference to him and to the conduct of his office. (*Zobel* v. *Zobel* (1907) 151 Cal. 98, 100-102.... See 1 Witkin, Cal. Procedure (1954) Jurisdiction, §§ 71-72 [pp. 341-342], 75 [pp. 344-345.])" A general appearance "is equivalent to personal service of summons" (Code Civ. Proc., § 410.50) and "waives irregularities in the service of process." (*Terzich* v. *Medak* (1978) 78 Cal.App.3d 636, 639 [144 Cal.Rptr. 323].)

Accordingly, when the Municipal Court made a general appearance, it waived any right to contest the jurisdiction of the superior court. "It is well settled that 'if a defendant wishes to insist upon the objection that he is not in court for want of jurisdiction over his person, he must specially appear for that purpose only, and must keep out for all purposes except to make that objection' [citation]; otherwise, he waives 'any right [he] may have to insist that jurisdiction of [his] person had not been obtained.' [Citation.]" (*California Dental Assn.* v. *American Dental Assn.* (1979) 23 Cal.3d 346, 352 [152 Cal.Rptr. 546, 590 P.2d 401].)

If we assume, arguendo, some defect in the service upon the Municipal Court, then the general appearance and the participation in the proceedings effected a waiver of such procedural defaults.

## II

■ The Municipal Court next urges procedural error in the trial court's denial of its request to file an answer to the amended petition for writ of habeas corpus and/or writ of mandamus after it was overruled.

Code of Civil Procedure section 1089 provides: "On the date for return of the alternative writ, or on which the application for the writ is noticed, or, if the Judicial Council shall adopt rules relating to the return and answer, then at the time provided by those rules, the party upon whom the writ or notice has been served *may make a return by*

*demurrer, verified answer or both.* If the return is by demurrer alone, the court *may* allow an answer to be filed within such time as it may designate. Nothing in this section affects rules of the Judicial Council governing original writ proceedings in reviewing courts." (Italics added.)

The Municipal Court initially made return to the amended petitions by demurrer alone. After argument on the demurrer, the superior court orally announced its intention to issue the writ of mandamus. Only after this announcement by the court of its intention to issue the writ did the Municipal Court request the opportunity to file an answer. The superior court tacitly denied this request by signing the peremptory writ.

The Municipal Court contends the permissive language in section 1089, "[i]f the return is by demurrer alone, the court may allow an answer to be filed," must be construed as mandatory, thus requiring an opportunity to answer after a return by demurrer alone.

The word "may" used in a statute is usually permissive. (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 133 [142 Cal.Rptr. 325]; *Hollman v. Warren* (1948) 32 Cal.2d 351, 356 [192 P.2d 562].) The word "may" is usually not construed as creating a requirement but is used to signify the ability to choose or the power to act. (*Gyler v. Mission Ins. Co.* (1973) 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219].)

"Although 'may' may be construed to be mandatory where the object to be obtained compels such a construction, or where that construction is necessary to give effect to the legislative intent, in the absence of such special circumstances, it should be interpreted as permissive or conferring discretion.... This rule is consistent with the general principle that, unless clearly indicated otherwise, the words in a statute are to be given a sensible construction according to their commonly understood meaning." (*Lara v. Bd. of Supervisors* (1976) 59 Cal.App.3d 399, 407 [130 Cal.Rptr. 668].)

California Civil Writs (Cont.Ed.Bar 1980 Supp.) section 15.1, page 77, states: "A 1971 amendment to CCP § 1089 ... allows a return by demurrer alone. The statutory language that the court 'may' allow an answer to be filed if the return was by demurrer alone should not be interpreted as giving the court discretion to deny the right to answer. See

*Mass* v. *Board of Educ.*, 61 Cal.2d 612, . . ." However, the case cited, *Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 623 [39 Cal.Rptr. 739, 394 P.2d 579], does not support the broad conclusion drawn. In *Mass* v. *Board of Education, supra*, the term "may" was used in a statute defining a *public duty*—to pay back salary to a discharged employee (p. 623). In *Hollman* v. *Warren, supra*, 32 Cal.2d 351, 356, the duty of the Governor to appoint notaries was mandatory although "may" was used in the statute; and in *Harless* v. *Carter* (1954) 42 Cal.2d 352, 356 [267 P.2d 4], a mandatory duty of the city treasurer to sell property on demand of a bond holder was found. In each of these cases the permissive "may" was used in a statute requiring a *public duty*.

In the statute at bench no public duty is defined. The statute treats with pleading matters only. Thus an "unusual" construction of the word is not required. "No special circumstances" appear here.

Before the 1971 amendment of Code of Civil Procedure section 1089, the only response to a petition for writ of mandate explicitly provided for by that section was an answer "under oath, in the same manner as an answer to a complaint in a civil action." And *"except as otherwise provided,"* general rules of pleading and practice applied to mandamus proceedings. (Code Civ. Proc., § 1109; see *Central Bank* v. *Superior Court* (1978) 81 Cal.App.3d 592, 600 [146 Cal.Rptr. 503]; *Rodriguez* v. *Municipal Court, supra*, 25 Cal.App.3d 521, 526.) Thus, the recommended practice, before 1971, was to file an answer *with* a demurrer since section 472a of the Code of Civil Procedure then provided, in part, that "[w]hen the demurrer to a complaint, or to a cross-complaint, is overruled and there is no answer filed (or entered), the court *may*, upon such terms as may be just, allow an answer." (Italics added.) (See Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 15.7, 15.12, pp. 384, 386.)

In 1971, the same year the Legislature amended section 1089 to its present language, section 472a was amended to provide in part: "[W]hen a demurrer to a complaint or to a cross-complaint is overruled and there is no answer filed (or entered), the court *shall* allow an answer to be filed (or entered) upon such terms as may be just." (Italics added.)

Section 1089 has since 1971 "otherwise provided" if the return to the writ is by demurrer alone, "the court *may* allow an answer to be filed within such time as it may designate." (Italics added.) Thus it is arguable section 472a no longer applies to mandamus proceedings.

■ Since the Legislature has chosen to use the permissive "may" in its 1971 amendment of section 1089, rather than the mandatory "shall," we conclude the trial court had discretion to grant or deny leave to answer after return by demurrer alone.

■ One further facet of the problem remains. It is contended the court in refusing the opportunity to answer denied the Municipal Court a full trial on the merits of the petition for writ of mandate.

In evaluating this contention several factors must be weighed. First, the request to file an answer was made the day *after* the court announced its intention to issue the writ of mandamus. Second, counsel for the Municipal Court was physically present at all hearings in the proceedings below, except for the hearing on September 1, 1978, and made a general appearance at the September 26, 1978, hearing by moving for a continuance. Thus, the court acquired jurisdiction over the Municipal Court as of September 26, 1978. (Code. Civ. Proc., § 410.50.) This request, if honored, would have required the trial court to listen again to all the evidence it had previously heard in the habeas corpus proceedings. The trial court relied on evidence taken in connection with the habeas corpus proceeding in issuing its peremptory writ of mandate and making its findings of fact and conclusions of law. The Municipal Court tendered no new issues, shows no prejudice (see Code Civ. Proc., § 475) arising from the trial court's denial of a request to file an answer. We find no abuse of discretion here.

### III

■ It is next contended the trial court erred in issuing a writ of mandamus compelling the Municipal Court to provide prearraignment counseling attorneys for any person charged with an offense which could result in confinement.

First, the Municipal Court asserts the manner in which it admonishes defendants appearing for arraignment on misdemeanor charges is a discretionary matter, therefore it has no duty enforceable by a writ of mandate.

Section 1085 of the Code of Civil Procedure provides, in part, that a writ of mandate may be issued "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station ...." ■ Before a writ of mandate will issue, it must be

shown a "clear, present and usually ministerial duty" was imposed upon the respondent and that the petitioner has a "clear, present and beneficial right" to have the duty performed. (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624], quoting *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].) The "duty" required for issuance of a writ of mandate has been interpreted to include, when a discretionary duty is involved, the duty to exercise discretion and the duty not to abuse discretion. (Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 5.24-5.31, pp. 78-84.)

The duty owed to Rhyne and other defendants similarly situated is rooted in constitutional origin. Article I, section 15 of the California Constitution guarantees "[t]he defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense . . . ." Section 987, subdivision (a) of the Penal Code, one of several statutory provisions implementing this state constitutional right to counsel, provides: "In a noncapital case, if the defendant appears for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and shall be asked if he desires the assistance of counsel. If he desires and is unable to employ counsel the court shall assign counsel to defend him."

▇ The fundamental constitutional right to assistance of counsel is guaranteed equally in felony cases and to persons charged with a misdemeanor in inferior courts where imprisonment may follow conviction. (*Argersinger* v. *Hamlin* (1972) 407 U.S. 25, 37 [32 L.Ed.2d 530, 538-539, 92 S.Ct. 2006]; *Gordon* v. *Justice Court* (1974) 12 Cal.3d 323, 332) [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551].) "Under the California Constitution, a trial judge *must advise* a defendant of his right to state appointed counsel in *all* felony and misdemeanor proceedings whether actual imprisonment is to follow or not (Cal. Const., art. I, § 13; . . ." (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 301 [110 Cal.Rptr. 329, 515 P.2d 273].)

▇ In misdemeanor arraignment proceedings the court has a modicum of discretion as to the method it utilizes in advising defendants of their constitutional rights, including the right to counsel. (*In re Johnson* (1965) 62 Cal.2d 325, 332-336 [42 Cal.Rptr. 228, 398 P.2d 420].) The court, in such proceedings, may collectively advise those charged with misdemeanors of their rights when there is assurance the announcement was heard and understood. (*Id.* at p. 332, fn. 5.) And, the record can be

made by supplementing the collective warning by a written waiver form, read and signed by the defendant, or a stenographic transcript. (*Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 307.) Although less stringent procedures for advising defendants of their rights are required in misdemeanor arraignment proceedings, "there can be no impairment of the fundamental constitutional rights of any defendant." (*In re Johnson, supra,* at p. 336.) ▮▮▮ We conclude mandamus is an appropriate remedy when an inferior tribunal fails to recognize a defendant's right to counsel. (*Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930, 933 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984]; *Illingworth* v. *Municipal Court* (1980) 102 Cal.App.3d 19, 21 [164 Cal.Rptr. 53]; and *Rodriguez* v. *Municipal Court* (1972) 25 Cal. App.3d 521 [102 Cal.Rptr. 45].)

The record here indicates as of July 1978, the Municipal Court used a combination of written forms and a mass admonishment to advise defendants, appearing at its morning arraignment proceedings on misdemeanor charges, of their constitutional rights. Both the forms and the admonishment employed were properly found by the superior court to be defective. Counsel was not always available for appointment at these morning sessions and counseling attorneys were no longer provided.

We conclude the record reflects a clear and wilful failure to recognize, to give effect, in any real fashion, to the constitutionally guaranteed right to counsel. The writ of mandate was the appropriate remedy to compel the performance by the Municipal Court of its constitutionally imposed duty.

### IV

The Municipal Court argues in the alternative, however, that even if a writ of mandate was appropriate to compel a correct advisement of potential misdemeanants of their constitutional rights and appointment of counsel where required, yet the Municipal Court had no duty, enforceable by a writ of mandate, to provide "counseling attorneys" before and during arraignment to *all* persons charged with offenses which could result in confinement. It is argued Rhyne has confused "the right of a defendant appearing for arraignment to have counsel assigned by the court before being arraigned if such defendant desires the assistance of counsel and is unable to employ counsel, with...the alleged right...to a free counseling attorney both prior to and during all appearances...."

No previous case in California is found requiring the availability of counseling attorneys before a plea may be entered in a misdemeanor proceeding. The problems raised by overcrowded arraignment courts, however, have been pointed out by both the United States Supreme Court and the California Supreme Court. In *Argersinger* v. *Hamlin, supra*, 407 U.S. 25, 34 [32 L.Ed.2d 530, 536-537, 92 S.Ct. 2006], the Supreme Court stated: "Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as in felony cases. Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution.

"In addition, the volume of misdemeanor cases, far greater in number than felony prosecutions, may create an obsession for speedy dispositions, regardless of the fairness of the result." (Fn. omitted.)

Similarly, in *In re Johnson, supra*, 62 Cal.2d 325, 336, the court recognized "that the typically crowded arraignment calendars of our courts pose urgent problems in the administration of justice in California."

A misdemeanor defendant in order to intelligently and knowledgeably waive his constitutional rights, including his right to counsel, and enter a plea, needs to consult with counsel and be advised on a host of matters preliminary to any plea. Counseling attorneys serve a most necessary purpose in mass production arraignment courts if the constitutional mandates are to be translated into realities. By advising misdemeanant defendants as to the elements of the offenses charged, of possible defenses, of the consequences of their pleas, and by assisting the court in making a determination of indigency, counseling attorneys help ensure judicious pleas are entered in that assembly line of 100 defendants processed in the 3-hour period. The constitutionally imposed "duty" to provide attorneys is not a matter of grace or form to be fulfilled by empty ritual. The right to counsel if it is to have meaning must aid and assist the defendant at every stage of the proceedings. The likely to be bewildered misdemeanor defendant, coming to an arraignment session where 100 persons are to be advised, arraigned, pleas taken, possibly sentenced—if the right to counsel is to be anything more than an empty promise—must receive advice on a variety of critical matters *before* approaching the podium. To leave this function to unexplained forms is to effectively deny advice of counsel; to require the overburdened judge to establish factually from questioning each of 100

defendants whether their financial condition warrants indigency status is to wear out the most leathern of judicial vocal chords and bring the whole procedure to a hoarse halt.

 If the Municipal Court is to fulfill, in any real way, its constitutional duties to advise of rights and to appoint counsel in an appropriate case, then preappearance counseling in the manner and detail as performed by Defenders is a necessity in its mass arraignment sessions. A clear and present duty existed, warrants the writ issued.

## V

Finally, the Municipal Court raises a mootness argument. The second prerequisite for the issuance of a writ of mandamus is a "clear, present and beneficial right" *in the petitioner* to the performance of the duty sought to be compelled. (*Loder* v. *Municipal Court, supra,* 17 Cal.3d at p. 863; Code Civ. Proc., § 1086.) Although Rhyne may not be able to show that she is still beneficially interested in the provision of counseling attorneys by the Municipal Court, this court is not precluded from determining whether counseling attorneys are required since the question is one of broad public interest. In *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716 [94 Cal.Rptr. 602, 484 P.2d 578], the court stated "the issue does not become moot merely because the question is of no further immediate interest to the person who raised it" where the question will arise in the future. (At pp. 719-720.) (See also *Bradshaw* v. *Duffy* (1980) 104 Cal.App.3d 475, 482 [163 Cal.Rptr. 559].)

## VI

### *Appeal From Denial of Attorney Fees*

 Rhyne appeals the judgment insofar as it denied her attorney fees. The trial court conceded the lawsuit met "all" the requirements of *Serrano III (Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]) to authorize an attorney fee upon the "private attorney general" doctrine (pp. 46-47) but concluded the Municipal Court was not a "public entity" within the language of section 1021.5 of the Code of Civil Procedure and upon that ground alone denied the request for fees.

If applicable to the North County Municipal Court, the private attorney general concept, as codified in Code of Civil Procedure section

1021.5, authorized an award of attorney fees in the present case for as the trial court found (1) the action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate. (Code Civ. Proc., § 1021.5; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 934-935 [154 Cal.Rptr. 503, 593 P.2d 200] [*Woodland Hills II*].)

Section 1021.5 of the Code of Civil Procedure provides: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. *With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor.*" (Italics added.)

No authority[3] has been submitted holding a municipal court is or is not a "public entity" within section 1021.5; however Evidence Code section 200 defines "public entity" as including "a nation, state, county, city and county, city, district, public authority, public agency, or any other political subdivision or public corporation, whether foreign or domestic." (Stats. 1965, ch. 299, p. 1299.) And the comment of the Law Revision Commission states: "The broad definition of 'public entity' includes every form of public authority, both foreign and domestic." (West Ann. Evid. Code, § 200, p. 21.) Section 811.2 of the Government Code has this equally broad definition of "public entity" in the context here pertinent—governmental immunity from suit: "'Public entity' includes the State, the Regents of the University of California, a county, city, district, public authority, public agency and any other political subdivision or public corporation in the State." (Added by Stats. 1963, ch. 1681, § 1, p. 3267.) And the Law Revision Commission comment

[3]In the recent case of *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829, 833, footnote 1 [160 Cal.Rptr. 465], the court assumed "arguendo," but did not decide, that a municipal court "is both a party and a 'public entity' within the meaning of the statute."

again: "This definition is intended to include every kind of independent political or governmental entity in the State." (West's Ann. Gov. Code, § 811.2, p. 160.)

The broad statutory language would encompass a public judicial entity, as well as a legislative, executive or administrative "entity." Furthermore, the patent obvious purpose of the Legislature in enacting section 1021.5 was to ensure that an aggrieved citizen have access to the judicial process where statutory or constitutional rights have been subjected to wholesale trampling.

As the Supreme Court explained in *Woodland Hills Residents Assn., Inc.* v. *City Council* (*Woodland Hills II*) (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593, P.2d 200]: "[T]he fundamental objective of the private attorney general doctrine of attorney fees is '"to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens."' . . . The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. (See, e.g., *Newman* v. *Piggie Park Enterprises, Inc.* (1968) 390 U.S. 400, 401-402 . . . .)"

If judicial public entities are to be excluded from these broad statutory definitions, the legislative purpose will be frustrated in some most substantial measure.

This legislative act penetrates only a peripheral area of the judicial wall of immunity from suit. It is no grand leap over that barrier. It does not sweep away any principle of high importance to the administration of justice such as the rule "which exempts judges of courts of superior or general authority from liability in civil actions for acts done by them in exercise of their judicial function [and which] obtains in all countries where there is any well ordered system of jurisprudence." (*Bradley* v. *Fisher* (1872) 80 U.S. (13 Wall.) 335 [20 L.Ed 646, 649], cited with approval in *Pierson* v. *Ray* (1967) 386 U.S. 547, 553-555 [18 L.Ed.2d 288, 294-295, 87 S.Ct. 1213].) It is a long established general rule that a *judge* is not to be held answerable for acts performed in his judicial capacity. (*City of Santa Clara* v. *County of Santa Clara* (1969) 1 Cal. App.3d 493, 498 [81 Cal.Rptr. 643].)

Where a court or judge is named as respondent (as in a mandamus proceeding) the award of costs "cannot run against it or him if it be found the proceeding was defended in good faith." (*Oksner* v. *Superior Court* (1964) 229 Cal.App.2d 672, 690 [40 Cal.Rptr. 621].) But this rule has never precluded an award of costs (not to include attorney fees under Code Civ. Proc., § 1095) against an *unsuccessful real party in interest.* (*Lerner* v. *Superior Court* (1952) 38 Cal.2d 676, 686-687 [242 Cal.Rptr. 321].) The court in *McCarthy* v. *Superior Court* (1944) 65 Cal.App.2d 42 [149 Cal.Rptr. 871], made this differential analysis of the responsibility for *costs* under Code of Civil Procedure section 1095, reasoning: "[A]s to both damages and costs, we are of the opinion that the provisions of section 1095 have no application to a proceeding such as this, brought against a superior court to restrain the erroneous exercise of judicial power in litigation between private individuals, to which the state is not a party, in which it is in no way interested, and wherein it has no right of representation.

" . . . and while it is true that a judge of the superior court is deemed to be a state officer and the common practice is to join him as a party to a mandamus or prohibition proceeding which has arisen out of a matter pending or determined in the court over which he presides, it is the tribunal itself, the superior court, that is the respondent in the mandamus or prohibition proceeding, and the writ if issued is directed against the superior court. The real respondent is the court, and it is not a 'state, county or municipal officer' within the meaning of section 1095.

"*Where the state is the real party in interest to the special proceeding or to the litigation out of which such proceeding has arisen, and the state is represented therein by a state officer appearing in behalf of the state, a different situation is presented*; but it is inconceivable that the Legislature ever intended that the state should be held liable in damages and for costs for the erroneous exercise of judicial power by a court in hearing and determining litigation between private individuals to which the state is not a party, in which it has not the slightest interest, and has no right of representation." (Italics added.)

Here "a different situation is presented." This is not litigation between private parties. The Municipal Court is *the* real party in interest, has a genuine stake in the proceedings, its outcome. It has a right to, was represented throughout the litigation. The Municipal Court for the North County Judicial District was the public body—entity—that did

not prevail in the lawsuit. The Legislature has in the precise terms of Code of Civil Procedure section 1021.5 waived sovereign immunity to the extent of authorizing attorney's fees against "public entities" as a generic group provided the other preconditions are met. We can find no legal reason to thwart or restrict that legislative purpose so as to exclude judicial public entities from the legislatively imposed obligation for attorney fees. If this Municipal Court—this public entity—is to be excluded from the broad sweep of Code of Civil Procedure section 1021.5, then "to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills II, supra*, p. 933.)

The judgment is affirmed excepting only the order denying attorney fees which is reversed; the matter is remanded to the trial court for the sole purpose of determining and awarding attorney fees due Rhyne for both the trial and appeal.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied January 12, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 3, 1981. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.