[No. G020239. Fourth Dist., Div. Three. Feb. 14, 1997.]

CHARLES CHITAT NG, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Richard Schwartzberg, Gary M. Pohlson and George Peters for Petitioner.

Ronald Y. Butler, Public Defender, Carl C. Holmes, Assistant Public Defender, William G. Kelley and James G. Merwin, Deputy Public Defenders, as Amici Curiae on behalf of Petitioner.

Robert R. Fitzgerald, in pro. per., for Respondent.

Daniel E. Lungren, Attorney General, Charlene A. Honnaka, Deputy Attorney General, and Peter H. Smith, District Attorney, for Real Party in Interest.

## OPINION

**RYLAARSDAM, J.**—We hold the trial court abused its discretion in relieving appointed counsel pursuant to a motion under *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] where there was no factual showing defendant's right to the assistance of counsel would be impaired by the continued representation. Therefore, the court erred in denying defendant's subsequent motion, made within one week after the erroneous grant of the *Marsden* motion, to reverse the earlier order.

We also hold that a trial judge lacks standing to oppose a petition for extraordinary relief where there is no issue affecting the court's operating procedures or budget. In addition we determine that the trial judge should be disqualified in the interest of justice.

### FACTS

Petitioner is charged in a multicount information with, inter alia, 12 counts of murder, which are alleged to have occurred more than 12 years ago. The case has an extremely complicated history, involves massive amounts of evidence and has already resulted in one opinion from the California Supreme Court (*Ng* v. *Superior Court* (1992) 4 Cal.4th 29 [13 Cal.Rptr.2d 856, 840 P.2d 961]).

The Orange County Public Defender was appointed to represent petitioner in September 1994 and continued to represent him until August 2, 1996. On August 2, petitioner appeared before the assigned trial judge in connection with a collateral motion, dealing with conditions of petitioner's confinement in the Orange County jail. Because of the nature of the proceedings, the People had waived their presence. To the surprise of everyone, except petitioner and the trial judge, who had received a letter from him, petitioner moved the court to relieve the public defender as his attorney pursuant to *People* v. *Marsden, supra,* 2 Cal.3d 118. After conducting a brief hearing in chambers, the court granted the motion.

A week later, petitioner moved the court to reinstate the public defender as his counsel. The motion was supported by the declaration of Dr. Gary Dylewski, a psychiatrist, which explained that petitioner's earlier request to relieve his counsel had been motivated by petitioner's mental state. The declaration explained that petitioner had "realized he had misplaced his frustration upon those persons who were making their best efforts to prepare his defense."

The People also filed a motion to vacate the earlier order. This motion was based on the absence of notice of petitioner's motion for substitution of attorney and asserted the substitution violated the People's right to a speedy trial under article I, section 29 of the California Constitution. After another brief in camera hearing, the court denied the request to vacate the earlier order.

Petitioner sought a writ of mandate from this court, directing the trial court to vacate the order denying the motion to reinstate the public defender. We denied the petition, whereupon petitioner sought review in the California Supreme Court. That court granted the petition for review and transferred the matter to this court with directions to vacate the order denying mandate and to issue an alternative writ. We issued an alternative writ and also granted a petition filed by the public defender for leave to appear as amicus curiae.

After we issued the alternative writ, the trial judge filed a return and a declaration explaining the reasons for his decision. Petitioner moved to strike the return and declaration on the basis that the trial court lacks standing to contest these proceedings. The prosecutor, real party in interest, did not respond to the petition, but did appear for oral argument.

## Discussion

### *The Trial Judge's Return on Behalf of Respondent*

After we issued our alternative writ, the trial judge filed a return to the petition. Petitioner moved to strike this return. As in most writ proceedings in appellate courts, the superior court is the nominal respondent. Does this give that court or a judge of that court standing in the proceedings before us?

In *Municipal Court* v. *Superior Court (Gonzalez)* (1993) 5 Cal.4th 1126 [22 Cal.Rptr.2d 504, 857 P.2d 325], our Supreme Court considered a petition for a writ of mandate brought by a municipal court, seeking to set aside a superior court order granting a criminal defendant's habeas corpus petition. The latter petition had been granted on grounds the preliminary hearing had been conducted by a court commissioner rather than by a judge of the municipal court. The Supreme Court refused to consider the issue of the power of a commissioner to conduct a preliminary hearing on the merits. Relying on *Municipal Court* v. *Superior Court* (1988) 202 Cal.App.3d 957 [249 Cal.Rptr. 182] *(Swenson)*, involving a similar issue of the standing of a court to initiate a writ proceeding, the *Gonzalez* court held the petitioner lacked standing to bring the action. In so holding, the court quoted *Swenson*: " 'In our common law judicial system we rely upon a separation of roles to bring about proper results. The courts' role is to decide cases; the parties' role is to bring cases before the courts. If a party is aggrieved by the ruling of a lower court, he is provided with an avenue of appeal to a higher tribunal by means of an orderly prescribed procedure, . . . A municipal court may have reason to complain of the treatment of one of its decisions, or its procedures, at the hands of the reviewing court. Nevertheless, the premise under which the judiciary operates is straightforward: if no individual party finds it worth his or her while to champion the cause and seek judicial review, then review will not occur.' " *(Municipal Court* v. *Superior Court (Gonzalez)*, supra, 5 Cal.4th at p. 1131.)

The apparent premise underlying the court's decisions in *Gonzalez* and *Swenson* is that the court should not assume a partisan role. As noted in 8 Witkin, California Procedure (3d ed. 1985) Extraordinary Writs, section 148, page 789, ". . . if certiorari, prohibition or mandamus is sought against a *court*, the respondent judge, as in an appeal from a judgment, is a neutral party in the controversy between the plaintiff and defendant in the main action. The adverse party in that action is the real party in interest, . . ." Such neutrality is also demanded by the duty of impartiality imposed upon judges by the California Code of Judicial Ethics (see canon 3).

■ The duty of impartiality and neutrality does not, however, necessarily preclude a respondent court from contesting a petition for extraordinary writ under all circumstances. For example, Witkin notes, "In rare cases, the individual judge may be the real respondent; e.g., where prohibition is sought to prevent a disqualified judge from hearing a matter." (8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, § 149, p. 791, citing *Central Pac. Ry. Co.* v. *Superior Court* (1931) 211 Cal. 706, 707 [296 P. 883]; *Calhoun* v. *Superior Court* (1958) 51 Cal.2d 257, 260 [331 P.2d 648].) Other cases where a court's participation in an appellate writ proceeding was accepted are collected in Justice Kennard's concurring and dissenting opinion in *Municipal Court* v. *Superior Court (Gonzalez)*, *supra*, 5 Cal.4th at pages 1133-1141.

"On occasion, when the significant effect of an issue is on a trial court's procedures rather than on the litigation in which the issue arises, the real party in interest may not even contest an opposing party's petition for writ of mandate or prohibition challenging a trial court's ruling. The respondent court is then the *sole* party opposing the petition for extraordinary relief. (See, e.g., *Press-Enterprise Co.* v. *Superior Court of California* (1984) 464 U.S. 501 [78 L.Ed.2d 629, 104 S.Ct. 819] [magistrate's power to close preliminary hearing]; *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774 [126 Cal.Rptr. 251, 543 P.2d 619] [court's power to continue case when defense counsel has a calendar conflict]; *Shipp* v. *Superior Court* (1992) 5 Cal.App.4th 147 [6 Cal.Rptr.2d 685] [whether family court assignment under local court policy is an 'all purpose' assignment under Code Civ. Proc., § 170.6]; *Flores* v. *Superior Court* (1991) 226 Cal.App.3d 797 [277 Cal.Rptr. 90] [effect of policy memorandum designating certain courts as 'direct calendar courts' on challenges under Code Civ. Proc., § 170.6]; *Huffman* v. *Superior Court* (1990) 219 Cal.App.3d 1480 [269 Cal.Rptr. 12] [court's obligation to provide indigent defendant with trial transcript after first trial ends in hung jury].)

"When a court does not prevail in a writ proceeding brought by a litigant attacking the validity of its procedures, it has always been permitted to seek review of the adverse ruling, either by filing a notice of appeal (if the adverse ruling was by the superior court) or by filing a petition for review in this court (if the adverse ruling was by the Court of Appeal). (See, e.g., *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182 [137 Cal.Rptr. 460, 561 P.2d 1148] [municipal court appeal from order compelling it to disqualify trial judge under Code Civ. Proc., § 170.6]; *Lekse* v. *Municipal Court* (1982) 138 Cal.App.3d 188 [187 Cal.Rptr. 698] [municipal court appeal from order that small claims court must consolidate related claims, thereby depriving court of jurisdiction to hear them]; *Olney* v. *Municipal Court* (1982) 133

Cal.App.3d 455 [184 Cal.Rptr. 78] [municipal court appeal from order compelling it to set aside policy requiring misdemeanor defendants to personally appear at readiness conferences]; *Rhyne* v. *Municipal Court* (1980) 113 Cal.App.3d 807 [170 Cal.Rptr. 312] [municipal court appeal from order granting indigents right to counsel in contempt hearings]; *Roswall* v. *Municipal Court* (1979) 89 Cal.App.3d 467 [152 Cal.Rptr. 337] [municipal court appeal from order barring it from relieving public defender after reexamination of defendant's indigence]; *Reygoza* v. *Superior Court* (1991) 230 Cal.App.3d 514 [281 Cal.Rptr. 390] [superior court petition for review after Court of Appeal invalidated policy that cases assigned to a department are assigned to the presiding judge of that department for all purposes]; *Iverson* v. *Superior Court* (1985) 167 Cal.App.3d 544 [213 Cal.Rptr. 399] [superior court petition for hearing after Court of Appeal holding that superior court's local rule conflicts with California Rules of Court].)" (*Municipal Court* v. *Superior Court (Gonzalez)*, *supra*, 5 Cal.4th at pp. 1138-1139 (conc. and dis. opn. of Kennard, J.).)

Each of the cases cited by Justice Kennard deals with a situation where "the significant effect of an issue is on a trial court's procedures rather than on the litigation in which the issue arises . . . ." (*Municipal Court* v. *Superior Court (Gonzalez)*, *supra*, 5 Cal.4th at p. 1138 (conc. and dis. opn. of Kennard, J.).) Justice Kennard, who would have granted standing to the municipal court to litigate the issue of its use of commissioners for preliminary hearings, nevertheless bases this view on the fact that the issue "has a significant adverse effect on the operating procedures of a municipal court . . . ." (*Id.* at p. 1140.)

 There are three bases which might arguably justify the trial court's advocacy in opposition to the petition here. Some of the cases cited by Justice Kennard might suggest that such advocacy was proper because the prosecution did not contest the petition. (See, e.g., *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774 [126 Cal.Rptr. 251, 543 P.2d 619] [no appearance by real party; county counsel appeared for court]; *Shipp* v. *Superior Court* (1992) 5 Cal.App.4th 147 [6 Cal.Rptr.2d 685] [no appearance by real party; county counsel appeared for court].) Another potential basis for the trial court's advocacy is suggested by Justice Kennard's reference to *Rhyne* v. *Municipal Court* (1980) 113 Cal.App.3d 807 [170 Cal.Rptr. 312] (dealing with indigent's right to counsel, an issue here). Finally, as noted above, Witkin suggests that "In rare cases, the individual judge may be the real respondent; e.g., where prohibition is sought to prevent a disqualified judge from hearing a matter." (8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, § 149, p. 791.) Since, as discussed below, disqualification of the trial judge is before us, we need to evaluate the propriety of the judge's return to the petition in that light as well.

The mere fact real party did not file a return to the instant petition, should not, standing alone, provide justification for the trial judge assuming an advocacy position in connection with appellate review of the decision. In each of the four cases cited by Justice Kennard illustrating this situation (*Press-Enterprise Co.* v. *Superior Court of California* (1984) 464 U.S. 501 [104 S.Ct. 819, 78 L.Ed.2d 629]; *Townsend* v. *Superior Court, supra,* 15 Cal.3d 774; *Shipp* v. *Superior Court, supra,* 5 Cal.App.4th 147; and *Huffman* v. *Superior Court* (1990) 219 Cal.App.3d 1480 [269 Cal.Rptr. 12]), there was an additional factor justifying participation by the court or the judge: The issue involved directly impacted the operations and procedures of the court or potentially imposed financial obligations which would directly affect the court's operations. Such is not the case here and, absent issues which directly impact the efficient operation of the court or the court's budget, the mere fact that real party elects not to resist a petition does not entitle the trial court to do so.

The issue of whether one appointed attorney rather than another represents an indigent criminal defendant may, under certain circumstances, affect "the operating procedure" of the court in that issues pertaining to the court's budget may be involved. If so, an institutional response by the court might be appropriate. However, there is no suggestion this is the case here. The trial judge's response deals solely with the judge's justification for his actions and, as such, the response does not differ from an attempt by a trial judge to file an amicus curiae brief in a pending appeal relating to the merits of an issue ruled upon by that judge.

Judges have standing to contest attempts to disqualify them. Code of Civil Procedure section 170.3, subdivision (c), contemplates an adversary proceeding in which the judge may take an active part if litigants seek to disqualify a judge for cause. The judge's participation in the appellate process concerning such issues is therefore also appropriate. (See, e.g., *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182 [137 Cal.Rptr. 460, 561 P.2d 1148]; *Calhoun* v. *Superior Court, supra,* 51 Cal.2d 257; *Central Pac. Ry. Co.* v. *Superior Court, supra,* 211 Cal. 706.) However, although disqualification of the trial judge is before us (see discussion below), the return filed by the trial judge does not deal with this issue but merely seeks to explain and justify his rulings in connection with the *Marsden* and subsequent motion.

*Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266 [258 Cal.Rptr. 66] also deserves comment in this context. The case deals with the criteria to be used by appellate courts in granting writ relief. In doing so, the court, quoting from *Kerr* v. *United States District Court* (1976) 426 U.S. 394, 402-403 [96 S.Ct. 2119, 2123-2124, 48 L.Ed.2d 725], stated, "Writ petitions

' "have the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him" in the underlying case." ' " (209 Cal.App.3d at p. 1273.) One might infer from this quotation that the *Omaha* court was of the opinion respondent courts could elect personally to contest writ petitions whenever they chose. Such an inference is not warranted.

The noted quote from *Omaha* originated in *Ex parte Fahey* (1947) 332 U.S. 258 [67 S.Ct. 1558, 91 L.Ed. 2041], where the United States Supreme Court iterated the well-established rule that writ relief is "reserved for really extraordinary causes." (*Id.* at p. 260 [67 S.Ct. at p. 1559].) There is no suggestion that in either *Kerr* or *Fahey* the court considered the conditions under which the respondent court was permitted to contest the writ petition. Nor did *Omaha* deal with this issue. In fact, the *Omaha* court noted, immediately following the quoted sentence, "Judges should be umpires rather than players" (*Omaha Indemnity Co.* v. *Superior Court, supra,* 209 Cal.App.3d at p. 1273), the very premise upon which we base our decision herein.

A judge's desire to explain and justify his or her decision to the appellate court is understandable. Trial judges must bear the frustration of having appellants question their judgment and attack their learning in the law as well as the even greater frustration of reading inadequate briefs purporting to defend their decisions. The duty of impartiality and neutrality seals their lips, dries the ink in their pens and denies them access to their word processors; they may not set the record straight; they may not come to the aid of the less than well-informed Court of Appeal. This duty, and the silence it imposes, applies whether an issue is brought to the appellate court by way of appeal, petition for extraordinary writ, or otherwise. Except under the unusual circumstances noted above, the requirement of neutrality prohibits judges from having a stake in the outcome of the appellate decision in "their" cases.

Since the issue here does not bear on any of the operating procedures of the trial court or of the trial judge, we grant petitioner's motion to strike the return filed by respondent. In doing so, we recognize a level of responsibility on our part in perhaps having misled the trial judge into believing we desired he file a return to the petition. Our order that an alternative writ of mandate issue contained the customary language that the *respondent superior court* "show cause . . . why a peremptory writ of mandate should not issue" and ordered that "Real Parties in interest and/or *respondent superior court* shall serve and file their returns . . . ." (Italics added.) Such terminology may well have misled the trial judge into believing that his response was not only proper but required. Nevertheless, for the reasons discussed herein, it would be inappropriate for us to consider the return to the petition.

*The Trial Judge's Declaration in Opposition to the Petition*

The trial judge also submitted a declaration supporting his decision. Petitioner moved to strike this declaration as well. In the declaration, the judge, inter alia, describes his reasons for not reinstating prior counsel, including various matters not apparent from the record of the hearing. The same considerations which compel us to strike his return to the petition, noted in the preceding section, also require us to strike this declaration. The same prohibition on advocacy by a trial judge should preclude her or him from offering evidence in opposition to a petition for extraordinary writ not involving the procedures of the court.

In addition, the matters contained in the trial judge's declaration constitute new evidence not previously presented in the trial court, which we therefore decline to consider. (See *Conservatorship of Hart* (1991) 228 Cal.App.3d 1244, 1257 [279 Cal.Rptr. 249].) Such matters as petitioner's demeanor, referred to in the declaration, if relevant to the trial court's determination, should have been described on the record at the time the rulings were made.

Finally, we are also mindful of the statutory prohibition which precludes judges from testifying. With exceptions not applicable here, Evidence Code section 703.5 provides: "No person presiding at any judicial . . . proceeding . . . shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, . . ." Although brought in the context of a criminal proceeding, this writ proceeding is a special proceeding of a civil nature (see *Wenzler* v. *Municipal Court* (1965) 235 Cal.App.2d 128, 131-132 [45 Cal.Rptr. 54]; 1 Cal. Civil Appellate Practice (Cont.Ed.Bar 1996 3d ed.) § 1.35, p. 34). Therefore, we cannot consider the trial judge's declaration. We grant petitioner's motion to strike the declaration and confine our review to the record made in the trial court.

*The Order Relieving the Public Defender*

At the August 2 closed hearing, the court disclosed to the public defender that it had received a letter from petitioner and read the letter, wherein petitioner moved to have his appointed counsel removed, into the record. The letter stated, in general terms, that there was a "complete breakdown in the attorney-client relationship" and expressed petitioner's belief that "I cannot and will not receive adequate representation with him as my trial lawyer." The letter requested the court appoint "counsel familiar with my case history." The court inquired of petitioner as to the nature of the disagreement. His responses were extremely general, referring to the timing of certain motions, and culminated in a request that Mr. Margolin, a lawyer who had worked for petitioner in connection with earlier proceedings, be appointed instead of the public defender.

The court then stated it would not appoint Mr. Margolin and asked: "Are you telling me you can no longer work with Mr. Kelley [the assigned public defender]?" Petitioner responded: "I don't—I can't say for sure, but I lost the trust and confidence that I think I need to, to uh, to have, to have him as my counsel," whereupon the court granted the motion to relieve the public defender and appointed another attorney to represent petitioner. It appears obvious from the record that, although the motion was couched under *Marsden*, it was, in effect an effort by petitioner to obtain representation by Mr. Margolin. An accused has no right to appointment of an attorney of his or her own choice. (*People* v. *Chessman* (1959) 52 Cal.2d 467, 491 [341 P.2d 679], disapproved on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631, 637, fn. 2 [36 Cal.Rptr. 201, 388 P.2d 33]; *People* v. *Williams* (1959) 174 Cal.App.2d 364, 377 [345 P.2d 47].)

To the extent that petitioner referred to a disagreement with his attorney as to the timing of certain motions, such disagreement as to tactics does not provide a basis for ordering appointment of new counsel. ■ In *People* v. *Williams* (1970) 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008], the accused and his attorney disagreed about the client's right to testify on his own behalf. Even there, the court did not require the substitution of counsel: "To make mandatory the appointment of different counsel in all cases involving a disagreement between the defendant and his court-appointed attorney regarding trial tactics would not only add to the expense of the state in furnishing counsel for the indigent but would also give too great a chance to delay trials and otherwise embarrass effective prosecution for crime." (*Id.* at p. 906; see also 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2746, p. 3311.) If a disagreement over so fundamental an issue as the right to testify does not require substitution of counsel, a vague disagreement over the timing of certain motions hardly provides the basis for the decision made here.

As noted in *People* v. *Smith* (1993) 6 Cal.4th 684 [25 Cal.Rptr.2d 122, 863 P.2d 192], "[N]ew counsel should not be appointed without a proper showing. . . . The court should deny a request for new counsel at any stage unless it is satisfied that the defendant has made the required showing." (*Id.* at p. 696.) The showing made here was less than colorably adequate. " 'A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused . . . .' " (*People* v. *Marsden, supra,* 2 Cal.3d 118, 123, quoting *People* v. *Mitchell* (1960) 185 Cal.App.2d 507, 512 [8 Cal.Rptr. 319].) ■ Although the decision whether or not to appoint new counsel rests with the sound discretion of the trial court (*People* v. *Marsden, supra,* 2 Cal.3d at p. 123), it is an abuse of discretion for the court

to do so absent a showing the appointed attorney does not or cannot adequately represent the defendant. The record here does not contain anything which approaches such an adequate showing and the order substituting counsel was a clear abuse of discretion. This is particularly true in the light of the high probability that such substitution would result in substantial further delays in a case which had already been pending an extraordinarily long time.

The court, having abused its discretion by relieving appointed counsel, compounded its error by refusing to reinstate the public defender when a motion to do so was made. The motion to reverse the earlier order, made only a week later, made it even more clear that there had been no basis to relieve counsel in the first place. That order must therefore be set aside and a new order entered to reinstate the public defender as counsel for petitioner.

*Disqualification of Trial Judge*

■ The public defender previously filed three petitions for extraordinary writs in this court on behalf of petitioner. (G017743, G018019 and G019953.) Each of them sought orders from this court to disqualify the trial judge, after a judge appointed pursuant to Code of Civil Procedure section 170.3, subdivision (c)(5), had denied such a motion. We denied these petitions without issuing either alternative writs or orders to show cause. Amicus curiae requested we take judicial notice of our files in connection with these petitions. The request is granted.

The previously filed petitions sought review of orders denying motions to disqualify the trial judge. Evidence presented in support of the motions sought to be reviewed by this court indicated inter alia that the trial judge had an unusual personal interest in handling the case. For example, on February 24, 1995, in connection with a motion to change venue, the court stated, "Candidly, this court wants to try this case. My ego tells me that I'm in a better posture than anybody around to do it with the experience I have had." This unusual interest in personally handling the case is consistent with the judge's conduct in filing pleadings here, as discussed above.

The earlier petitions also contain evidence of potential bias towards petitioner and towards petitioner's appointed counsel. We nevertheless concluded that substantial evidence supported the decision of the judge appointed pursuant to Code of Civil Procedure section 170.3, subdivision (c)(5). However, comments made by the trial judge in connection with the purported *Marsden* proceedings discussed herein, when coupled with the facts disclosed in the earlier petitions, lead us to conclude the trial judge should be disqualified.

At the time of the closed hearing on August 9, the court stated: "It's my expectation and opinion that Mr. Kelley [the assigned public defender] will

continue to delay as you were concerned about initially, that even though he suddenly found himself out on a limb, off the case, he now tells you all the good things he's going to do for you. I don't think that's going to happen. [¶] Mr. Kelley went through a great show of relief whenever I released counsel after you were gone, threw his hands up in the air and how God had done something good for him, he was very happy to be off the case. So what some people tell you may not be exactly what they mean, Mr. Ng. . . . [¶] In other words, he doesn't have the cushy job any longer of just representing you, and he has to go back to work representing all the other clients he had before." Petitioner correctly responded, "You mentioned about I expressed to you initially that counsel Kelley had been delaying the case; I never expressed that—" and "The letter I sent you only mentioned that there was a breakdown. I didn't mention anything about that counsel has been delaying the case."

Code of Civil Procedure section 170.1, subdivision (a)(6) provides the standard by which we are to determine whether the trial judge is to be disqualified: ". . . a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." We need not determine whether there is actual bias. The quoted derogatory and apparently unfounded statements concerning counsel, coupled with the evidence presented in support of the earlier petitions, and the court's unusual and inappropriate desire to keep the case, lead us to conclude that the interests of justice require that further proceedings herein be heard before a trial judge other than the presently assigned judge. (Code Civ. Proc., § 170.1, subd. (c).)

## DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order of August 9, 1996, denying the motion to reinstate the public defender and to issue a new order granting this motion. The writ shall further direct the Presiding Judge of the Orange County Superior Court to assign another judge to conduct further proceedings in the within case. The alternative writ is discharged and this court's stay order is dissolved.

Sills, P. J., and Crosby, J., concurred.