Opinion
ZIEBARTH, J.
All of these appeals raise essentially the same issues and we have, therefore, consolidated them for purposes of this decision.
I
Facts
The facts in each of these consolidated appeals indicate that each of the appellants has suffered convictions of violations of the relatively new California drunk driving statute, Vehicle Code section 23152, subdivision (b) (hereafter 23152(b)). This statute, which became effective on January 1, 1982, reads as follows:
“(b) It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle upon a highway or upon other than a highway in areas which are open to the general public.
“For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood.”
The appellant, Laurence Joseph Lujan, was observed by a California Highway Patrol (CHP) officer on January 16, 1982, to run a red light (causing another vehicle to brake), to speed and to weave erratically. After he was stopped by the officer, Lujan was observed to be exhibiting physical symptoms of intoxication. He refused to submit to any field sobriety tests. However, he did agree to submit to a chemical test of his breath. The results of that test were .24 and .25 blood alcohol level (BA), respectively. Lujan was thereafter charged with violating Vehicle Code section 23152(b). Both sides waived trial by jury in this case. As the result of his court trial, Lujan was found guilty of the offense charged. Because Lujan had suffered a prior conviction of a violation of the previous statute, Vehicle Code section 23102, subdivision (a) (hereafter 23102(a)), on August 19, 1977, his sentence was enhanced when judgment was pronounced on him on May 14,1982.
The appellant, Raymond Frank Blaschke, was involved in a traffic collision on the streets of Victoria Avenue and Pacific Street, in the City of San Bernardino on January 17, 1982. A CHP officer observed him to be exhibiting *Supp. 19 physical symptoms of intoxication. Blaschke attempted to perform some field sobriety tests, which the officer concluded he had failed. He submitted to a chemical test of his blood. The result of that test was .26 BA. Blaschke was charged with violations of Vehicle Code sections 23152 and 23152(b). Blaschke demurred to the complaint and he also filed a motion to strike prior convictions of violations of former Vehicle Code section 23102(a) on September 1 and November 25, 1981. The demurrer was overruled and the motion to strike was denied. Both sides waived trial by jury, and the case was then submitted to the trial court, sitting without a jury, on the police reports and the crime lab analysis. The trial court found Blaschke guilty as charged and on May 7, 1982, sentenced him to 120 days in the county jail in view of his prior convictions.
The appellant, Joe Louis Tucker, was stopped by a CHP officer on February 10, 1982. After he was asked to perform some field sobriety tests, he was arrested for a violation of the above quoted statute. The results of his breath tests on the gas chromatograph intoximeter were .16, .13, and .14 (BA) respectively. Both sides having waived trial by jury, he was found guilty by the trial court on June 17, 1982. Judgment was subsequently pronounced and he has appealed that judgment.
n
Contentions of the Parties
A. Contentions of the Appellants
1. Vehicle Code section 23152(b) is unconstitutionally vague.
2. Vehicle Code section 23152(b) is also unconstitutional because it is a criminal statute which in effect imposes strict liability on a defendant.
3. Enhancement of penalties for violation of Vehicle Code section 23152 based on prior convictions under Vehicle Code section 23102(a) is not authorized by the statute or by a reasonable construction thereof and, therefore, it fails to provide adequate notice to the defendant that he may be violating the law.
4. The prior convictions under Vehicle Code section 23102(a) were invalid because inadequate waivers of rights were obtained from the appellants in question.
*Supp. 20 B. Contentions of the Respondents
1. Section 23152(b) fulfills constitutional due process requirements, and provides adequate notice to persons engaging in the proscribed activity.
2. Section 23152(b) is not an invalid strict liability statute, because it fulfills the required union of act and intent.
3. Vehicle Code section 23170’s mandatory sentencing requirements are applicable to a defendant convicted under section 23152(b) who has a prior conviction under former section 23102(a).
4. There was an adequate finding that each of the appellants in question knowingly and intelligently waived his constitutional rights in his prior case/cases.
m
Issues
A. Are the provisions of Vehicle Code section 23152(b) so vague that they fail to give those persons subject to its provisions adequate notice thereby violating the due process requirements of both the United States and California Constitutions?
B. Is Vehicle Code section 23152(b) unconstitutional because it is a criminal statute which has the effect of imposing strict liability on a defendant?
C. Can prior convictions under former Vehicle Code section 23102, (a) or (b) be properly used to enhance the penalty for a violation of Vehicle Code section 23152(b)?
D. Did each of the appellants who had suffered a prior conviction validly waive his constitutional right before entering a plea of guilty to the prior charge?
IV
Discussion

A.

The appellants contend first of all that Vehicle Code section 23152(b) is unconstitutionally vague because it fails to give an accused adequate notice of the conduct proscribed.
*Supp. 21 The appellants point out that the due process clause of the United States Constitution requires that a statute sufficiently define a crime so as to give adequate notice of the conduct which is proscribed. In the case of Connally v. General Const. Co. (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126] the United States Supreme Court stated that: “. . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.”
The applicants argue that section 23152(b) fails to meet both requirements of the due process standard established in Connally. They argue that the new statute is so technical that persons without some background in science or chemistry would have no real understanding of its meaning. Furthermore, the statute defines the crime in terms of an internal physical state which can only be measured by sophisticated scientific procedures. Therefore, it is argued that a potential defendant has no way of determining when he may be violating the law.
The appellants have cited as authority for these contentions the case of People v. Clenney (1958) 165 Cal.App.2d 241 [331 P.2d 696]. In the Clenney case, the reviewing court stated (at p. 251) as follows: “. . . The citizens cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is unlawful for him to pursue.”
The respondent counters this claim of unconstitutionality of the statute in question on the ground of vagueness by pointing out that this same argument was made against the predecessor statutes to section 23152(b) and the argument was held to be without any merit. Therefore, the respondent argues that this statute should also be determined to meet all constitutional requirements as to certainty and definiteness of purpose.
Although section 23152 has been in force since January 1,1982, we have not found any reported California appellate decision in which the question of the constitutionality of this new statute was considered. Therefore, a review of the holdings of previous appellate decisions regarding the predecessor statutes might be helpful to us in deciding these appeals. This would be true if it is first determined that the new statute does not represent a major change in the law that was established by the predecessor statutes. We will, therefore, proceed to review the prior state of the law in this area.
*Supp. 22 Former Vehicle Code section 23102(a) provided that it was unlawful for any person who was under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug, to drive a vehicle upon any highway. To assist the trier of fact to make the determination of whether a particular defendant was under the influence of intoxicating liquor, etc., former Vehicle Code section 23126, subdivision (a)(3) established a rebuttable presumption affecting the burden of proof to the effect that where the amount of alcohol at the time of the test of the driver’s blood, breath, or urine by chemical analysis established that it was 0.10 percent or more, it was presumed that the person was under the influence of intoxicating liquor at the time of the alleged driving of a vehicle while under the influence of intoxicating liquor.
The new Vehicle Code section 23152 has the effect of replacing both Vehicle Code sections 23102(a) and 23126 by providing first of all in subdivision (a) that: “[i]t is unlawful for any person who is under the influence of an alcoholic beverage or any drug,... to drive a vehicle. ” That subdivision is almost identical to the substance of former Vehicle Code section 23102(a).
It is subdivision (b) of the new statute that effects a major change in the law. That subdivision provides that: “[i]t is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle upon a highway or upon other than a highway in areas which are open to the general public. For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood.” Pursuant to this new provision, no longer is there merely a rebuttable presumption that a person who drives a motor vehicle in an area open to the public while having a . 10 percent or more alcohol in his or her blood at the time of any chemical test to determine same, but rather there is now a conclusive presumption that a person who drives a vehicle while having a . 10 percent or more of alcohol in his or her blood has violated the law. The only issues that need to be determined in any given case now are (1) whether the defendant was driving a vehicle in any area open to the public, and (2) whether the defendant’s blood alcohol level was . 10 percent or more at the time of the alleged offense. If these two elements of the offense are established beyond a reasonable doubt, there is virtually no defense to the charge.
If the evidence presented at trial reveals that the person charged with driving under the influence of an alcoholic beverage had a BA level which was less than .10 percent by weight, but .05 or greater, such fact does not give rise to any presumption that such person was or was not under the influence of an alcoholic beverage. Such fact may simply be considered with other competent evidence in determining whether the person was under the influence of an alcoholic beverage at the time of the alleged offense. (See Veh. Code, § 23155, subd. (a)(2).)
*Supp. 23 If the evidence presented at trial shows that defendant had a blood alcohol level of less than .05 percent by weight, then there is still a rebuttable presumption that such person was not under the influence of an alcoholic beverage at the time of the alleged offense. (See Veh. Code, § 23155, subd. (a)(1).)
The predecessor statute to Vehicle Code section 23155, (i.e. Veh. Code, § 23126) survived a constitutional attack on the same ground of vagueness in the case of People v. Lachman (1972) 23 Cal.App.3d 1094 [100 Cal.Rptr. 710], In Lachman, the reviewing court specifically held that the presumption contained in former Vehicle Code section 23126, subdivision (a)(3) was neither unfair nor unconstitutional. The Lachman court stated (at p. 1097) as follows:
“A statutory presumption affecting the burden of proof in a criminal cause does not alter the People’s duty to prove defendant’s guilt beyond a reasonable doubt. It merely allows proof of an ultimate fact by permitting that fact to be presumed from proof of a preliminary fact. Whether the ultimate fact is proved by direct evidence or by a presumption which arises from proof of a preliminary fact, the defendant’s burden or rebuttal remains the same; he need only raise a reasonable doubt as to the sufficiency of the proof of the ultimate fact. (Evid. Code, § 607; DeWoody v. Superior Court, 8 Cal.App.3d 52, 56-57 [87 Cal.Rptr. 210])”
The Lachman court then recognized the fact that the use of a statutory presumption in a criminal cause may infringe upon due process of law “unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend,” citing as its authority the decision of the United States Supreme Court in Leary v. United States (1969) 395 U.S. 6, 36 [23 L.Ed.2d 57, 82, 89 S.Ct. 1532], After reviewing the facts and holding in Leary, the Lachman court then concluded (at p. 1098) that:
“The presumption in Vehicle Code section 23126, subdivision (a)(3), is not based on speculation, but is founded on the long-recognized and scientifically established relationship between blood alcohol level and degree of intoxication. At bench the chemist, an experienced researcher in the significance of alcohol readings, testified that ‘an individual with a blood alcohol percentage falling with in this range [from .10 to .15 percent blood alcohol] will be probably under the influence of alcohol, for it is within this range, if not in the previous .05 to .10 range, that all persons will come under the influence of alcohol . . . .’ (See also Lawrence v. City of Los Angeles, 53 Cal.App.2d 6, 9 [127 P.2d 931]; People v. Conterno, 170 Cal.App.2d Supp. 817, 823-824 [339 P.2d 968].) It can be said with substantial assurance that a person with 0.10percent or more alcohol in his blood is more likely than not under the influence of intoxicating liquor. There thus exists sufficient rational connection in experience be *Supp. 24 tween the preliminary fact proved and the ultimate fact presumed to satisfy the requirement of due process of law.” (Italics supplied.)
In the later case of People v. Schreiber (1975) 45 Cal.App.3d 917 [119 Cal.Rptr. 812], this same statutory presumption was claimed to be unconstitutional on the theories that (1) there was no rational connection between the fact proved and the fact presumed and (2) that the statutory presumption deprived a defendant of the presumption of innocence and of the right to remain silent. The Schreiber court rejected those arguments and upheld the constitutionality of the statute.
The contention advanced by the appellants herein that Vehicle Code section 23152 is unconstitutionally vague is essentially the same argument that was made by the appellant in the fairly recent case of People v. Perkins (1981) 126 Cal.App.3d Supp. 12 [179 Cal.Rptr. 431]. In Perkins, the presumption provision that was contained in former Vehicle Code section 23126 (now Veh. Code, § 23155) was also challenged on the ground of being unconstitutionally vague because one could not be expected to know when his blood alcohol level will reach the level that would automatically make operative the statutory presumption. The Perkins court dismissed that constitutional challenge on the ground of vagueness by stating that:
“The claim that Vehicle Code section 23126 is unconstitutionally vague because it establishes a presumption that an individual is intoxicated when his blood alcohol level reaches .10 percent is totally without merit. This argument is based on the premise that one cannot be expected to know when his blood alcohol will reach a level to invoke the statutory presumption. There is no showing, nor could there reasonably be, that a driver cannot tell when his or her sobriety has been affected to such an extent as to significantly impair driving ability. In addition, we point out that this code section has been determined not to be unconstitutional on the theory that there was no rational connection between the fact proved and the fact presumed or because the presumption procedure failed to fix an ultimate time as a period in which the prescribed test must be taken or because the presumption violated or infringed upon a defendant’s presumption of innocence or right to remain silent. [Citation omitted.] Further, the presumption statute satisfies the constitutional requirements of due process because there is a long-recognized and scientific relationship between a drunk driving suspect’s blood alcohol levels and the degree of intoxication of the suspect. [Citation omitted.]” (126 Cal.App.3d Supp. at p. 21.)
As far back as 1966, the California Supreme Court recognized in its decision in People v. Sudduth (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401], that there has been a need to have a fair, efficient and accurate system of detection and prevention of drunken driving.
*Supp. 25 The long range purpose of sections 23152, 23155, 23165 and 23170 (and all of their predecessor statutes) has been to inhibit intoxicated persons from driving on the highways. (See People v. Schreiber, supra, 45 Cal.App.3d, at p. 922; Zidell v. Bright (1968) 264 Cal.App.2d 867, 870 [71 Cal.Rptr. 811]; and Finley v. Orr (1968) 262 Cal.App.2d 656 [69 Cal.Rptr. 137].
It should also be recognized that although California has been the leader in many legal and statutory changes, this state is not the first nor the only state to enact a so-called “.10 law.” At present, 13 other states have enacted a similar statute.[1]
It is also interesting to note that at least to date, each of those statutes in our sister states has withstood constitutional attack on a variety of grounds.[2] Several of the decisions by courts have specifically addressed the notice issue raised by the appellants herein. (See Greaves v. State (Utah 1974) 528 P.2d 805, 806; State v. Hamza (Fla. 1977) 342 So.2d 80; State v. Carhartt (Fla. 1976) 335 So.2d 554; People v. Weber (1975) 82 Misc.2d 593 [371 N.Y.S.2d 361].)
We are also aware of the general rule that “[i]n testing the constitutionality of a statute, a cardinal principle is that the legislative act is presumed to be constitutional and unconstitutionality must be clearly shown and doubts resolved in favor of its validity.” (People v. Schrieber, supra, 45 Cal.App.3d 917, 921, citing as its authority 5 Witkin, Summary of Cal. Law (8th ed. 1974) § 43, p. 3281; and also 16 Am.Jur.2d § 137.) Further “[a] court should interpret legislation reasonably and should attempt to give effect to the apparent purpose of the statute. [Citation omitted.] California courts have consistently recognized that a large proportion of traffic injuries and fatalities are due to inebriated *Supp. 26 drivers. [Citations omitted.] (People v. Schrieber, supra, 45 Cal.App.3d 917, 921-922, citing as its authority Zidell v. Bright (1968) 264 Cal.App.2d 867, 869-870 [71 Cal.Rptr. 111].)
It is well established that a reviewing court must indulge every presumption in favor of the constitutionality of legislative enactments.
“ ‘[Deliberate acts of the Legislature come before us clothed with a presumption of constitutionality. “All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity; statutes must be upheld unless their unconstitutionality clearly, positively and unmistakeably [sic] appears.”’ [Citations omitted.]” (In re Ricky H. (1970) 2 Cal.3d 513, 519 [86 Cal.Rptr. 76,468 P.2d204].)
In adhering to this principle of presumptive validity, a reviewing court should make every effort to construe a statute so as to render it constitutional and must uphold it unless the constitutional infirmity clearly, positively and unmistakeably appears. Appellants have made no showing why this well established presumption should be disregarded in the instant cases.
For these various reasons, we have concluded that Vehicle Code section 23152 is not unconstitutionally vague as contended by the appellants.

B.

The appellants next contend that section 23152(b) is also unconstitutional on another ground because it constitutes a criminal statute which in effect imposes strict liability.
The appellants point out that the Penal Code requires that: “. . . (i)n every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence.” (Pen. Code, § 20.) (See CALJIC Nos. 3.30 and 3.31.)
The appellants have cited People v. Calban (1976) 65 Cal.App.3d 578 [135 Cal.Rptr. 441] for the proposition that all criminal offenses (except those that are classified as “public welfare” offenses) require as one of their elements either criminal intent or criminal negligence. In Calban, the reviewing court observed (at p. 584) that: “Normally, persons who commit an act through misfortune or by accident with no evil design, intention or culpable negligence are not criminally responsible for the act. (Pen. Code, § 26, subd. 6.) The only exceptions to this general rule are so called ‘public welfare’ or ‘malum prohibitum’ crimes which are punishable despite the absence of any criminal intent or criminal negligence. ...”
*Supp. 27 The appellants argue that since section 23152(b) provides for maximum penalties of a $1,000 fine and one year in the county jail for second and subsequent convictions, such an offense cannot be considered to be a mere “public welfare” offense. We agree. However, we disagree that section 23152(b) constitutes an invalid strict liability criminal statute. A criminal statute is not invalid so as to bar conviction of a conscious wrongdoer simply because that statute does not contain in itself an express requirement of some type of wrongful intent. In its decision in the case of People v. Vogel (1956) 46 Cal.2d 798 [299 P.2d 850], the California Supreme Court pointed out (at pp. 801 and 802) that the mere omission of any reference to intent in the definitions of a crime does not necessarily mean that no intent requirement is required by the particular statute. In the later case of People v. Hood (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370], the California Supreme Court stated (at pp. 456-457) that: “When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to he a general criminal intent. When the definition refers to defendant’s intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.” (Italics supplied.) (See also People v. Norris (1978) 88 Cal.App.3d Supp. 32, 37 [152 Cal.Rptr. 134].)
Pursuant to Vogel and Hood, it is clear that the legislative omission of an express intent requirement in section 23152(b) merely means that such statute must be deemed to be a general criminal intent statute.
This rule of construction was also applied by the reviewing court in People v. Keith (1960) 184 Cal.App.2d Supp. 884 [7 Cal.Rptr. 613], to the predecessor statute, section 23102. As observed above, the intent requirement under section 23102 is identical to such requirement in the current statute. In Keith, the court observed (at p. 886) that: “No penalty is placed on the use of the drug itself. The penalty is placed upon driving, and then, only when ‘under the influence’ as judicially defined and as adopted by the legislature.” (Italics added.)
As the Keith court recognized (also at p. 886), even if a person innocently got under the influence of intoxicating liquor or drugs or both, if such a person drives when in such condition, he is in violation of the statute. The reason being that the statute only required a general intent to drive, not a specific intent to drive a vehicle while knowingly under the influence.[3]
*Supp. 28 Other California crimes similarly punish persons of a given status who perform an unlawful act without any reference to the matter of intent. Thus, a review of these statutes may be instructive.
Penal Code section 12025 makes unlawful the carrying of certain firearms without a license. In People v. Jurado (1972) 25 Cal.App.3d 1027 [102 Cal.Rptr. 498], a defendant claimed error because of the failure to instruct the jury that the defendant had to have knowledge of the concealed firearm. The court held that it was sufficient to give the instruction that “Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent.” {Id., at p. 1031, italics added.)
In Dunn v. Municipal Court (1963) 220 Cal.App.2d 858, 874-875 [34 Cal.Rptr. 251], the court addressed the issue of intent in a violation of Fish and Game Code section 3081 (possession of deer, elk or antelope meat). Defendant alleged that the People were required to show specific intent. The court said: “To render a person guilty of a public offense in which specific intent is not an ingredient it is sufficient that he intentionally committed the forbidden act. . . . It is not essential to prove that the person charged entertained any intent to violate the law. It is presumed that an unlawful act was done with an unlawful intent. . . . One who possesses deer or elk meat, except as provided in section 3081 of the Fish and Game Code, is presumed to do so with an unlawful intent. By the mere possession of such meat in violation of the statute, the possessor is thereby using it as a means of committing a public offense. . . . [Citations omitted].” (Italics added.)
The fact that a general intent criminal statute provides for a presumption of the requisite criminal intent merely from the doing of the act which the law declares to be a crime, (even though the defendant may not know that his act or conduct is unlawful), does not make such a statute a strict liability offense. Rather, such a statute simply shifts the criminal intent. Evidence Code section 668, provides that with regard to general criminal intent crimes, an unlawful intent is presumed from the doing of the unlawful act. Such presumption has the legal effect of being a conclusive presumption because it is settled that “[t]o constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent even though he may not know that his act or conduct is unlawful.” (See CALJIC No. 3.30 (1979 Rev.).)
For these reasons, we have concluded that section 23152 is not an invalid strict liability criminal statute, but rather is a general intent statute. The statute *Supp. 29 is valid even though it only describes the prohibited act without reference to any intent to do a further act or to achieve a future consequence.

C.

The appellants next contend that the new statute in itself does not inform a defendant that a prior conviction under former Vehicle Code section 23102(a) will be considered as a prior offense for the purpose of enhancement of penalty under sections 23152, 23165 and 23170. Therefore, the enhancement of penalty aspects of such statute constitutes an unconstitutional ex post facto law and also violates the due process requirement of the United States and California Constitutions as to notice.
The respondent answers those contentions by pointing out that when the Legislature enacted the new section 23152, along with sections 23165 and 23170, it also provided in pertinent part as follows:
“Any reference in the provisions of the Vehicle Code to a prior offense of section 23152 shall include a prior offense under 23102 or 23105, as those sections read prior to January 1, 1982.” (Stats. 1981, ch. 940, § 45, subd. (b), p. 3582.)
The respondent argues that by enacting all of these various sections at the same time as a part of chapter 940 of the 1981 Statutes, the Legislature clearly demonstrated its intention to include prior section 23102(a) convictions for purposes of the enhancement aspects of sections 23152, 23165, and 23170. We agree. Any other conclusion would be ludicrous.
Former Vehicle Code section 23102, subdivision (b) provides for an enhancement of penalty for the conviction of a second or subsequent offense within seven years of a prior conviction whereby even if the defendant was granted probation on the second or subsequent offense, as a condition of probation, such defendant was required to be confined in jail for at least five days, but not more than one year and to also pay a fine of at least $250 but not more than $1,000.
The new Vehicle Code section 23152 does not in itself provide for any enhancement of penalty for any subsequent convictions of the same offense. However, the new Vehicle Code section 23165 does provide for an enhancement of penalty for subsequent convictions of violations of section 23152. Section 23165 provides that if a person is convicted of a violation of section 23152 and the offense occurred within five years of a prior conviction of a violation of either sections 23152 or 23153, or a violation after January 1, 1982, of section 23103 as specified in section 23103.5, such person must be punished by im *Supp. 30 prisonment in the county jail for not less than 90 days nor more than 1 year and also a fine of not less than $375 but not more than $1,000.
Section 23170 provides that if any person is convicted of a violation of section 23152 and the offense occurred within five years of two or more prior offenses which resulted in convictions of sections 23152 or 23153 or both, that person must be punished by imprisonment in the county jail for not less than one-hundred twenty days nor more than one year and also be a fine of between $375 and $1,000. Also, as an additional penalty, the person’s privilege to operate a motor vehicle also has to be revoked pursuant to section 13352, subdivision (a)(5).
The applicable rule of construction was summarized as follows:
“ ‘ “ ‘Statutes in pari materia are these which relate to the same person or thing, or to the same class of persons or things. In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law.’” [Citations.] The statutes should be construed together if they harmonize and achieve a uniform and consistent legislative purpose.’ [Citations.]” Kendall-Brief Co. v. Superior Court (1976) 60 Cal.App.3d 462, 466 [131 Cal.Rptr. 515], citing as authority Isobe v. Unemployment Ins. Appeals Bd. (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 528].)
In 1981, the California Legislature provided in part: “Any reference in the provisions of the Vehicle Code to a prior offense of section 23152 shall include a prior offense under section 23102 or 23105, as those sections read prior to January 1, 1982.” (Stats. 1981, ch. 940, § 45, subd. (b), p. 3582.)
By adopting this statute, the California Legislature clearly demonstrated its intent to include prior convictions suffered under former Vehicle Code section 23102(a) for purposes of punishment under section 23165. When sections 23165 and 40000.15 are construed in pari materia, it is clear that a defendant’s prior conviction is relevant to the enhancement of sentencing.
Finally, the statutes establishing the punishment for a defendant convicted of Vehicle Code section 23152(b) with prior conviction(s) do not have the effect of being ex post facto laws.
A succinct definition of an ex post facto law was stated by the court in People v. Venegas (1970) 10 Cal.App.3d 814, 822-823 [89 Cal.Rptr. 103], as follows: “ ‘An ex post facto law is one generally which inflicts greater punishment than *Supp. 31 the law imposed for the crime at the time it was committed or which was passed after the commission of the crime of which defendant is accused. ’ [Citations omitted.]” (Italics in original.)
Both sections 23102(a) and 23152(b) were in force before appellants’ respective convictions under each statute respectively. Without appellants’ acts after the passage of the new legislation, sections 23152(b) and 23170 would not have come into play.
As noted above, the Venegas court held that enhancing the penalty between the time of appellant’s prior felony commission and the commission of the subsequent offense did not violate the prohibition against ex post facto laws. The Venegas court stated (at p. 823) that: “The crime for which the defendant is punished in an instance such as we have here is not the earlier felony, but the new and separate crime of which the prior felony conviction is only a constituent element. Without the defendant’s commission of new and additional acts after he has notice of the new legislation, the statute passed or amended after the constituent felony conviction would not come into play.”
By analogy, simply enhancing the punishment for having a prior “driving under the influence” conviction is not ex post facto since the current offense was committed after the change of the law.

D.

Lastly, the appellants, Lujan and Blaschke, both contend as an additional ground for appeal that the prior convictions of violations of section 23102(a) incurred by both of them were constitutionally defective and, therefore, were improperly used by the trial court to enhance their respective sentences for violating section 23152(b).
Both Lujan and Blaschke argued in their respective motions before the trial court that their prior convictions were invalid on the following grounds:
1. No knowing, intelligent, understanding, express and individual waiver of their constitutional rights to:
a. counsel
b. jury trial
c. confrontation
d. self-incrimination
*Supp. 32 2. No advisal of the elements of the offense, possible pleas and defenses available.
In support of their written motions, Lujan and Blaschke also submitted written declarations. Lujan’s declaration read as follows in pertinent part:
“I, Laurence Joseph Lujan, declare
“That I was the defendant in San Bernardino Municipal Court Case Number T-21301. That on or about August 19, 1977, I plead guilty to the charge of California Vehicle Code § 23102a, driving under the influence.
“At the time I entered said plea I was not represented by counsel and had not consulted with counsel.
“Additionally, I was in custody at said time and plead guilty to avoid any fur- . ther incarceration. There were numerous persons present for arraignment on that date and I do not recall any individual discussions with the judge on that date concerning my constitutional rights and waiving said rights.”
Blaschke’s declaration read as follows in pertinent part:
“I, Raymond Blaschke, declare:
“That I was the defendant in San Bernardino Municipal Court case number SB-102182. That on or about September 1, 1981 I plead guilty to a violation California Vehicle Code § 23102a, driving under the influence.
“At the time I entered said plea I was not represented by counsel and had not consulted with counsel. Additionally, I was under severe emotional and financial problems involving my ex-wife and I do not have a good recollection of what occurred at the time of said plea.”
In an effort to meet the burden imposed on it by Vehicle Code section 23208 (formerly § 23102.2) of being required to produce evidence that each defendant had in fact suffered the prior convictions in question, the respondent submitted to the trial court certified copies of the docket sheet for each prior conviction. To rebut the contents of the aforementioned declarations, the respondent also submitted the written waiver forms which had been signed by Lujan and Blaschke at the time they entered pleas of guilty to the charge that was then pending against each of them. (See Veh. Code, § 23208, subd. (4).)
In its landmark decision in the case of Mills v. Municipal Court (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273], the California Supreme Court *Supp. 33 applied the so-called Boykin[4]—Tahl[5] standards that were applicable to the waiver of rights in felony cases to misdemeanor cases as well. The Mills court reiterated the Boykin-Tahl requirement that the record contain on its face direct evidence that before pleading guilty, the accused was aware or made aware of and expressly waived his rights to counsel, to confrontation, to a jury trial, and against self-incrimination. The Mills court recognized, however, that “the practicalities of the crowded inferior courts will permit some deviation from the strict felony procedure so long as the constitutional rights of defendants are respected.” (Id., 10 Cal.3d at p. 307.)
We now proceed to review of the record with regard to each of the prior convictions to determine whether they satisfied the requirements of the Boykin, Tahl, and Mills decisions and their progeny.
Each of the docket sheets indicate that the respective appellants were advised of their various constitutional rights in open court. That indication is reflected by the use by the courtroom clerk of a rubber date stamp in a blank which is next to each of the preprinted entries of what was advised and waived by the particular appellant. Also each of the Tahl waiver forms that were signed by the particular appellants stated that each of them had read and understood his rights and each of them waived “. . . the right to have the judge read and explain these rights and penalties to me.”
Several appellate cases since Mills have recognized that under appropriate circumstances docket entries alone may be sufficient to show that the particular accused knew each specific right and expressly waived it. (See Hart v. Municipal Court* (Cal.App.); Worsley v. Municipal Court (1981) 122 Cal.App.3d 409, 415-416 [176 Cal.Rptr. 324]; Nelson v. Justice Court (1978) 86 Cal.App.3d 64, 67 [150 Cal.Rptr. 39]; and Ganyo v. Municipal Court (1978) 80 Cal.App.3d 522, 529 [145 Cal.Rptr. 636].) However, “(s)uch entries, of course, must be prepared for the particular case before the court; the requirement will not be satisfied by the use of minute forms containing printed recitals ...” (In re Smiley (1967) 66 Cal.2d 606, 617, fn. 8 [58 Cal.Rptr. 579, 427 P.2d 179].) Therefore, where the docket sheet is merely a preprinted form with no markings or initials or other means of establishing that the entries are a contemporaneous reporting of what was advised and waived by the particular individual defendant, the docket entries have been held to be insufficient. (See Hart v. Municipal Court, supra,*; People v. Guevara (1980) 111 Cal.App.3d Supp. 19, 22-23 [169 Cal.Rptr. 19]; People v. Buller (1979) 101 Cal.App.3d 73, 75-76 [160 Cal.Rptr. 657]; Youkhanna v. Municipal Court (1978) 86 Cal.App.3d 612, 615 and fn. 1 [150 Cal.Rptr. 380] and Stewart v. Justice *Supp. 34 Court (1977) 74 Cal.App.3d 607, 609-610 [141 Cal.Rptr. 589].) On the other hand, it has been held that where the clerk makes docket entries under circumstances showing that the entries were prepared for the particular case before the court, such docket entries satisfy the Mills requirement. In Hart v. Municipal Court, supra, the courtroom clerk placed handwritten initials next to each advisal and waiver and that procedure was upheld on appeal. In Worsley v. Municipal Court, supra, 122 Cal.App.3d at pages 414-416, it was held that a combination of rubber stamp entries contemporaneously made, handwritten remarks and the judge’s signature sufficiently memorialized the specific advice and waivers relating to the individual defendant. In Nelson v. Justice Court, supra, 86 Cal.App.3d at page 67, the reviewing court commented that the minutes were prepared and certified “. . . by the clerk who inferably heard the advice given by the Court and [the] appellant’s responses thereto. . . .’’In Ganyo v. Municipal Court, supra, 80 Cal.App.3d at pages 527-529, the reviewing court held that where the clerk handwrote the defendant’s individual responses to questions put to her regarding her constitutional rights, that such procedure satisfied the requirements of the Mills decision.
With these examples and appellate holdings in mind, we have concluded that the contents of each of the docket sheets in question also satisfy the Mills requirement. The use by the clerk of a rubber date stamp beside each particular advisal and waiver certainly indicates that such individual entries were made “under circumstances showing that the entries were prepared for the particular case before the court.” Therefore, such docket entries by themselves clearly satisfied the Mills requirement. However, in the situations at bench, the facts set forth by the docket sheet entries were verified by the written Tahl waiver forms signed by each of the appellants. As noted above, each form recited the fact that each appellant had read and understood his rights and had expressly waived each of them. Each of the appellants then went on to expressly waive any right either of them may have had to have the judge read and explain the rights and penalties to each of them, individually and not simply as part of a group. Therefore, the contention of the appellant Lujan that his waiver of his right to have the judge explain his rights to him on an individual basis is without merit. The case of Rhyne v. Municipal Court (1980) 113 Cal.App.3d 807 [170 Cal.Rptr. 312], which was cited by the appellant Lujan as being in support of his contention does not compel a contrary result. In fact, the Rhyne court specifically recognized (at pp. 820 and 821) that a court handling misdemeanor arraignments has a modicum of discretion as to the method it utilizes in advising defendants of their various constitutional rights, including the right to counsel. The Rhyne court stated that “[t]he court, in such proceedings, may collectively advise those charged with misdemeanors of their rights when there is assurance the announcement was heard and understood. [Citation omitted.] And, the record can be made by supplementing the collective warning by a *Supp. 35 written waiver form, read and signed by the defendant. . . .” That is exactly the procedure that was followed by the various courts that handled the pleas of guilty which resulted in the prior convictions in question.
The trial court properly denied the motions by the appellants Lujan and Blaschke to have their respective prior convictions declared to be constitutionally defective. Therefore, such prior convictions were properly used by the trial court to enhance the sentences of Lujan and Blaschke for violating Vehicle Code section 23152(b).
For all of the reasons discussed at length above, the judgments of conviction incurred by each of the appellants herein are affirmed.
Bierschbach, P. J., and Chapman, J., concurred.

 Delaware (Del. Code Ann., tit. 21, § 4176, subd. (b)); Florida (Fla. Stats. Ann., § 316.028, subd. (3), now § 316.193, subd. (l)(b)); Maine (Me. Rev. Stats., tit. 29, § 1312-B, subds. IB, 2C); Minnesota (Minn. Stats., § 169.121, subd. (d)); Missouri (Mo. Rev. Stats., § 564.439, now § 577.012); Nebraska (Rev. Stats. Neb., § 39-669.07); New Hampshire (N.H. Rev. Stats. Ann. 265:89); New York (N.Y. Stats., Veh. and Traffic, § 1192, subd. 2); North Carolina (Gen. Stats. N.C., § 20-138, subd. (b)); Oregon (Ore. Rev. Stats., § 487.540, subd. (l)(a)); South Dakota (S.D. Codified Laws, § 32-23-1); Utah (Utah Code Ann., § 41-6-44); Vermont (Vt. Stats. Ann., tit. 23, § 1201); Washington (Rev. Code Wash. Ann., § 46.61.502).

 See People v. McDonough (1972) 39 App.Div.2d 188 [333 N.Y.S.2d 128, 129]; State v. Hamza (Fla. 1977) 342 So.2d 80; State v. Carhartt (Fla. 1976) 335 So.2d 554; State v. Hill (1976) 31 N.C.App. 733 [230 S.E.2d 579]; State v. Torrey (1978) 32 Ore.App. 439 [574 P.2d 1138]; State v. Clark (1978) 35 Ore.App. 851 [583 P.2d 1142]; People v. Bradford (1978) 96 Misc.2d 298 [408 N.Y.S.2d 1013]; State v. Rucker (Del.Super. 1972) 297 A.2d 400, 402; People v. Weber (1975) 82 Misc.2d 593 [371 N.Y.S.2d 361, 363]; Slaughter v. State (Del.Super. 1974) 322 A.2d 15, 16; State v. Oyen (S.D. 1979) 286 N.W.2d 317; State v. Basinger (1976) 30 N.C.App. 45 [226 S.E.2d 216]; State v. Abbott (1973) 15 Ore.App. 205 [514 P.2d 355]; Greaves v. State (Utah 1974) 528 P.2d 805; Coxe v. State (Del.Super. 1971) 281 A.2d 606; Roberts v. State (Fla.App. 1976) 329 So.2d 296; People v. Fox (1976) 87 Misc.2d 210 [382 N.Y.S.2d 921] and cases cited therein.

 See also the decision by the Utah Supreme Court in Greaves v. State (Utah 1974) 528 P.2d 805, 807, where the court was called upon to determine whether the Utah statute which also made it unlawful to drive with a blood alcohol level of. 10 percent was unconstitutional because such state inter alia also failed to require either a specific intent or an act which implied intent of some kind. The Greaves court rejected that challenge and stated that: “This is one of those sitúa *Supp. 28 tions where from the doing of the prohibited act one is presumed to intend its natural consequences; and it is the intentional doing of the act prohibited by law which constitutes the offense.” (Accord: State v. Oyen (S.D. 1979) 286 N.W.2d 317.)

 Boykin v. Alabama (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709],

 In re Tahl (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449],

 Reporter’s Note: Deleted on direction of Supreme Court by order dated February 16, 1983.