**STATE of Iowa, Plaintiff-Appellee,**

v.

**Daniel Lee CONNER,
Defendant-Appellant.**

**No. 84–1262.**

Court of Appeals of Iowa.

Aug. 29, 1985.

John A. Pabst, Pabst Law Firm, Albia, Iowa, for defendant-appellant.

Thomas J. Miller, Attorney General, and Lona Hansen, Asst. Atty. Gen., for plaintiff-appellee.

Heard by OXBERGER, C.J., and SCHLEGEL, and SACKETT, JJ.

OXBERGER, Chief Judge.

The defendant has challenged the constitutionality of the statute prohibiting operating a motor vehicle while under the influence of alcohol, contending that a portion of the statute creates an improper irrebuttable presumption. We affirm his conviction and hold the statute is constitutional.

A jury found the defendant, Daniel Conner, guilty of violating section 321.281(1)(b) of the Code by operating a motor vehicle on December 3, 1983, while having a blood alcohol content in excess of .13. The pertinent statute provides that it is violated in one of two ways:

1. A person shall not operate a motor vehicle upon the public highways of this state in either of the following conditions:

a. While under the influence of an alcoholic beverage, a narcotic, a hypnotic,

or other drug, or any combination of such substances.

b. While having thirteen hundredths or more of one percent by weight of alcohol in the blood.

During trial, evidence was presented that Conner had a blood alcohol content of .159. As indicated in an affidavit by a member of the jury, the jury found Conner was not under the influence, but had a blood alcohol content in excess of that prohibited by the Code.

Conner says this creates a conclusive presumption, which is prohibited since the State is required to show each element of a criminal offense beyond a reasonable doubt. *See State v. Hansen,* 203 N.W.2d 216, 219–220 (Iowa 1972). The defendant says this violates the 5th and 14th amendments of the Constitution and article I, section 9 of the Iowa Constitution, providing for due process of law.

In challenging the constitutionality of a statute, the defendant has a heavy burden. There is a strong presumption of constitutionality, and this court will avoid a construction which finds the statute unconstitutional, if it can be avoided. *Fitz v. Dolyak,* 712 F.2d 330, 332 (8th Cir.1983); *Stracke v. City of Council Bluffs,* 341 N.W.2d 731, 734 (Iowa 1983). The court will afford statutes every presumption of validity and will find them unconstitutional, "only upon a showing that they clearly infringe on constitutional rights and only if every reasonable basis for support is negated." *Woodbury County Soil Conservation District v. Ortner,* 279 N.W.2d 276, 277 (Iowa 1979). When there is a doubt, that doubt will be resolved in a manner to avoid finding the statute unconstitutional. *Iowa Industrial Commissioner v. Davis,* 286 N.W.2d 658, 661 (Iowa 1979).

The defendant concedes that certain crimes may be defined as strict liability or prohibited acts and that if this is properly classified as such, there is no constitutional violation. The State says section 321.-281(1)(b) is a public welfare offense imposing strict liability on motor vehicle operators who operate a motor vehicle with the prohibited blood alcohol content. Such strict liability crimes have been recognized in Iowa. *State v. Tague,* 310 N.W.2d 209, 211 (Iowa 1981); (overtime and illegal parking violations); *State v. Nolan,* 239 N.W.2d 102, 104 (Iowa 1976); *State v. Drake,* 219 N.W.2d 492, 496 (Iowa 1974) (statutory rape). Strict liability offenses, if properly classified, do not involve irrebuttable presumptions, but flatly prohibit the doing of a particular act. *State v. Drake,* at 496.

Therefore, if the statute is properly classified as a strict liability offense, as the State claims, then it cannot be in violation of the constitution. If it is not a strict liability offense, then it must be scrutinized to determine if an irrebuttable presumption is improperly included in the statute.

In the *Nolan* case, our court determined that illegal and overtime parking violations involved strict liability. *State v. Nolan,* at 105. The court referred to the Supreme Court case of *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) which has been cited as key to the exception that due process is not violated in the area of public welfare offenses. *Id.* at 104. The court explained, "These are public regulations that arose in the post-industrial revoluation era to cope with the complexitites of the then-emerging industrial world.... 'The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion that it might reasonably exact from one who assumed his responsibilities.'" *Id.* (citing *Morissette,* at 255–56, 72 S.Ct. at 246, 96 L.Ed. at 296–97.)

The ability to define strict liability crimes was limited by *Morissette,* however. The Supreme Court dictated that three factors must be present if the strict liability determination is to fall within the limits of the constitution. These include: (1) the penalty must be slight, (2) the conviction must not carry a damaging stigma, and (3) the conduct must not be similar to common-law negligence. *Morissette* at 256, 72 S.Ct. at 246, 96 L.Ed. at 296–97. Further, the

crime must be more like a regulatory act than a "true crime." *Id.; Nolan*, at 106.

In a recent case the Pennsylvania court was faced with determining whether its vehicular homicide statute was a public offense law when the underlying law broken during the accident was a minor traffic violation. *Commonwealth of Pennsylvania v. Heck*, 341 Pa.Super. 183, 491 A.2d 212 (1985). The court reviewed *Morissette* and related cases and quoted from Justice Blackmun, who, while a circuit judge, stated that where a crime:

> [S]eems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where the conviction does not gravely besmirch, where the statutory crime is not one taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent. The elimination of this element is then not violative of the due process clause.

*Id.* at (citing *Holdridge v. United States*, 282 F.2d 302, 310 (8th Cir.1960).

The court went on to determine that vehicular homicide is a "true crime" that the penalties were not light, and that the accused faced the burden of stigma with the crime. *Id.* Regulatory crimes, the court noted, included such provisions as pure food and drug acts, speeding ordinances, building regulations, child labor laws, and minimum wage and maximum hour legislation. *Id.* These crimes are totally different from "true crimes" involving moral delinquency and punishable by imprisonment and other serious penalty, the court stated. *Id.*

■ Using the factors set out by the United States Supreme Court, we cannot agree with the State that our drunk driving statute should be classified by this court as a strict liability or public offense crime. Depending on the number of prior convictions the defendant has on his or her record, the penalty ranges from a serious misdemeanor to a felony. All involve prison sentences, and in fact require that a minimum amount of jail time be served. On a first conviction, a serious misdemeanor, the defendant must spend at least 48 hours in jail and can be sentenced up to one year in prison, a $1000 fine, or both. Iowa Code § 321.281(2)(a) (1985). The defendant loses his license for up to six months. *Id.* at § 321B.16. The second conviction is an aggravated misdemeanor, with a potential jail sentence of two years, and a seven-day minimum jail term required. *Id.* at § 321.281(2)(b). A fine up to $5000 may also be imposed, and the defendant's license revoked up to one year. *Id.;* § 321B.16. On the third conviction, the offense moves to a Class D Felony, with a five-year prison sentence, and $7500 fine potential. *Id.* at 321.281(2)(c). The defendant's license may be revoked for six years. *Id.* at § 321.281(9)(a).

In reviewing the penalties for OWI, it can hardly be considered a mere regulatory crime, but rather is treated and classified as a "true crime." While at one time the conviction might have not carried the stigma it does today, the court is not ignorant of the fact that times have changed and an OWI conviction can carry the burden of public opprobrium. We cannot seriously categorize such an offense with illegal parking and improper left-turn violations.

We find this distinction important because of the impact upon other decisions were we to hold that the OWI statute is a strict liability crime. Strict liability offenses are not favored in our law and have been accepted with "expressions of misgivings." *Morissette*, 342 U.S. at 256, 72 S.Ct. at 246, 96 L.Ed. at 297. The Supreme Court stated:

> Radin, Intent, Crimina. 8 Encyc. Soc. Sci. 126, 130, says, ' * * * as long as in popular belief intention and the freedom of the will are taken as axiomatic, no penal system that negates the mental element can find general acceptance. It is vital to retain public support of methods of dealing with crime.' Again, 'The question of criminal intent will probably al-

ways have something of an academic taint. Nevertheless, the fact remains that determination of the boundary between intent and negligence spells freedom or condemation for thousands of individuals. The watchfulness of the jurist justifies itself at present in its insistance upon the examination of the mind of each individual offender.'

*Id.* at 255 n. 14, 72 S.Ct. at 245 n. 14, 96 L.Ed. at 296 n. 14. We cannot find this law to be justified as a public offense violation and yet conform to the ideals expressed by the Supreme Court in interpreting our constitution.

We do not agree, however, that the statute prohibiting drunk driving is unconstitutional. In *Heck,* the court dealt with its vehicular homicide case, but also compared it to its own drunk driving law, which, like ours, provides for a penalty where the driver has a certain blood alcohol content.

Another profitable comparison on the element of mens rea can be had with the drunk driving law, 75 Pa.C.S. § 3731. While it has been suggested that subsection 3731(a)(4) of the law defines an 'absolute liability' offense, *Commonwealth v. Mikulan* [504 Pa. 244, 470 A.2d 1339 (1983) ], supra (lead opinion by Larsen, J., upholding constitutionality of law), a better rationale for upholding the law is that while a person may not know the exact quantity of alcohol he can consume and still legally drive, he has some awareness of and control over the possible consequences of his decision to drink and drive.

*Heck,* 341 Pa.Super. at 211, 491 A.2d at 226.

Other jurisdictions have also commented that statutes identical to ours do not contain an irrebuttable presumption. Such decisions indicate that the *actus reus* of the crime is consuming alcohol until the defendant's blood alcohol content is .13 or more, *and* driving. The Arizona court has stated its statute "does not contain any presumption. It was enacted because of the potential harm from persons driving with .10 percent by weight of alcohol in

their blood. It is no more unconstitutional than a statute which makes it illegal to carry a concealed weapon." *State v. Thompson,* 138 Ariz. 341, 345, 674 P.2d 895, 899 (1983). The element of the crime is proof of .13 blood alcohol content, and the defendant must challenge the test in order to rebut the establishment of this element. *State v. Tanner,* 15 Ohio St.3d 1, 6, 472 N.E.2d 689, 693 (1984).

The California court has also recently stated its belief that its drunk driving statute imposing penalties upon a person for having excessive blood alcohol content and driving is not a strict liability act. *People v. Lujan,* 141 Cal.App.3d Supp. 15, 16, 192 Cal.Rptr. 109, 116 (1983). The court elaborated, saying, "even if a person innocently got under the influence of intoxicating liquor or drugs or both, if such a person drives when in such condition, he is in violation of the statute. The reason being that the statute only required a general intent to drive, not a specific intent to drive a vehicle while knowingly under the influence." *Id.* at 27, 192 Cal.Rptr. at 116–17.

We conclude the statute describes a general intent crime which requires proof beyond a reasonable doubt that (1) the defendant operated a motor vehicle, (2) while having a blood alcohol content of .13 or more. The crime may be avoided by not drinking to the point of having the proscribed blood alcohol content, or not driving while in such a condition. No irrebuttable presumption is involved since the act involves having the proscribed blood alcohol content and driving, and the jury need not presume .13 blood alcohol content equals being under the influence. We affirm the trial court's determination.

AFFIRMED.