Filed 3/8/23  P. v. Jackson CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL JACKSON,<br><br>　　　Defendant and Appellant. | A161692<br><br>(Solano County<br>　Super. Ct. No. VCR221796) |

Defendant Michael Jackson appeals following the trial court's order denying his motion for a new trial.  The trial court denied his previous motion for a new trial after a jury convicted him of second degree murder.  Jackson appealed his conviction on various grounds, including that the jury committed prejudicial misconduct by discussing his failure to testify at trial during deliberations.  This court issued a limited remand with instructions for the trial court to conduct an evidentiary hearing on the subject of juror misconduct because the record was not sufficiently clear as to the extent of the misconduct.  Following an evidentiary hearing on remand, the trial court (Hon. Daniel Healy) again denied Jackson's motion for a new trial after finding that the misconduct did not result in a reasonable probability of actual harm to him.  We affirm.

BACKGROUND

## A. Facts Underlying Conviction[1]

On September 5, 2014, witnesses observed Jackson engaged in a fist fight with another man at a park. A third man, Albert Dunn, was lying under a nearby tree and was not involved in the fight. The other man in the fight grabbed Jackson's backpack, threw it down, and rummaged through it with some other men. Jackson ran across the street into a restaurant and asked an employee there to use the phone. Jackson made a call but no one answered. The employee noticed that Jackson had tears in his eyes. As Jackson was leaving the restaurant, the employee saw the tip of a knife in his hand. Jackson went back to the park, enraged, and was yelling and chasing a group of people for about a minute. At this point, Dunn got up from the tree and began walking towards the parking lot. Jackson followed Dunn and stabbed him repeatedly in the chest. Dunn was taken to the hospital and died while in surgery.

Jackson was charged with murder (Pen. Code[2] § 187, subd. (a)) with a use of a deadly and dangerous weapon enhancement (§ 12022, subd. (b)(1)) and a prior strike conviction allegation (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)). His first trial resulted in a mistrial and he was retried. Prior to jury deliberations in the second trial, the court instructed the jurors that Jackson had a constitutional right not to testify and they should not consider for any reason the fact he did not testify.

---

[1] A more extensive statement of facts is included in this court's unpublished opinion following defendant's prior appeal. (*People v. Jackson* (Aug. 20, 2019, A151120) [nonpub. opn.] (*Jackson I*).) That opinion is part of the record and we cite only those facts from it that are relevant to this appeal.

[2] All further statutory references are to the Penal Code unless otherwise specified.

The trial court further "instructed the jury on first degree murder, second degree murder, and voluntary manslaughter based on the heat of passion and imperfect self-defense. Deliberations started, and the jury requested clarification on the definition of second degree murder the next day. It subsequently asked two additional questions on the mental state required for second degree murder. The jury found Jackson guilty of second degree murder and found true the allegations as to the use of a deadly weapon and the prior strike." (*Jackson I*, *supra*, A151120.)

## B. 2017 Motion for New Trial and Appeal

Following the verdict, Jackson moved for a new trial based on various grounds, including the jurors' discussion of his failure to testify, in violation of the trial court's admonition, which he argued constituted prejudicial misconduct. Jackson submitted the declarations of three jurors in support of the motion: L.I., D.R., and N.U.[3]

L.I. and D.R. both stated in their declarations that "[o]n the first day of deliberations, the jurors were split 7-5 between 2nd degree murder and manslaughter." All three jurors stated they discussed in front of the others that they would have voted for voluntary manslaughter if they had more evidence regarding what Jackson had in his backpack and whether the backpack was everything he owned. N.U. and D.R. recalled discussing that it would have made a difference if they had evidence that Jackson was homeless. All three jurors also stated that the alternate juror who was later seated mentioned that she would like to have heard Jackson testify. L.I. further recalled that some jurors continued this discussion and mentioned

---

[3] As the parties' briefs both refer to these three jurors by their initials, we will do the same.

3

"they needed more evidence or testimony from Mr. Jackson that would show that he was protecting himself, and that his possessions were all he had."

The trial court denied the motion for new trial and declined to hold an evidentiary hearing regarding the issue of jury misconduct. With respect to Jackson's failure to testify, the court noted that the record was "a little vague, because there's reference to him not testifying and there's reference to the defense not offering evidence." The court explained that given the argument of self-defense, "it makes logical sense that the jury would have a discussion looking for evidence to support a theory that the defense has proffered." The trial court concluded that reversal was not warranted as the record did not reveal "anything that suggests that the jury didn't otherwise go on to follow all of the instructions." On appeal, this court decided the issue of jury misconduct as follows: "Here, the parties do not dispute that the jurors' discussion of defendant's decision not to testify constitutes jury misconduct, so the question for our independent review would normally be whether the People have rebutted the presumption of prejudice arising therefrom. ([*People v.*] *Lavender* [(2014)] 60 Cal.4th [679,] 687 [(*Lavender*)].) However, as the court observed below, the record is not clear as to the scope of the alleged misconduct and whether the discussion of defendant's decision not [to] testify indicates that the jurors drew adverse inferences therefrom or, alternatively, reflected their assessment of the state of the evidence as to the charged crimes and defenses. Further, the record is silent regarding whether the jury foreman admonished the jurors and the duration of the discussions regarding defendant's failure to testify. In these circumstances, further inquiry was reasonably necessary to resolve factual questions regarding the extent of the jury misconduct, and it is appropriate for the court on remand to

4

explore the *Lavender* rebuttal factors to assess the potential prejudice arising from the misconduct." (*Jackson I, supra*, A151120.)

Our opinion concluded: "we conditionally vacate the judgment and remand to the trial court with directions to conduct an evidentiary hearing on the subject of juror misconduct, to be held in compliance with Evidence Code section 1150. If, after the evidentiary hearing, the new trial motion is not granted, the trial court shall reinstate the judgment." (*Jackson I, supra*, A151120.)

### C. Evidentiary Hearing Following Remand

On December 16, 2020, the trial court held an evidentiary hearing at which L.I., N.U., and D.R. appeared and testified. Prior to the hearing, Jackson submitted new declarations from these three jurors that elaborated on their recollection of the discussions during deliberations surrounding his failure to testify.

#### 1. Jurors' Declarations

##### i. L.I.

L.I.'s declaration stated in pertinent part: "The jury discussed Mr. Jackson not testifying at his trial. The jurors discussed that they needed to hear Mr. Jackson testify on his own behalf and explain to the jury that he was protecting himself and his belongings from his attackers during this incident, and explain what was so important in his backpack that made him go back to the area. There were jurors who discussed that if Mr. Jackson was truly innocent of murder charges then he would have testified and explained what happened. The fact Mr. Jackson did not testify and comments such as 'justice for the victim's family' were used by certain jurors to argue against a verdict for voluntary manslaughter."

5

L.I. further stated that the topic of Jackson's failure to testify came up more than once.  One instance was "sometime soon after the alternate juror initially came into deliberate, and then then there was a discussion about Mr. Jackson not testifying.  Then the jurors discussed another topic, and then again returned to the same topic of Mr. Jackson not testifying."  L.I. did not believe the jury foreperson admonished the jury to stop discussing this topic.

### ii.    N.U.

N.U., who was the foreperson, stated:  "Mr. Jackson's failure to testify was one of the factors discussed in the consideration for a lesser verdict of manslaughter.  It was discussed that it would make a difference for this lesser verdict if Mr. Jackson had testified, including about his character, his background, his childhood and earlier years, and other personal details that may have drove him to the edge to commit this crime.  I recall Juror #12 being very vocal and say 'well he must have done it' as a reason why Mr. Jackson didn't testify."

Consistent with L.I.'s declaration, N.U. stated that the topic of Jackson's failure to testify "was brought up more than once, including when the alternate juror came into deliberate."

### iii.    D.R.

Finally, D.R. stated in his declaration:  "The jury discussed Mr. Jackson's failure to testify at his trial.  The first time the topic of Mr. Jackson not testifying was brought up, it was about why Mr. Jackson did not testify.  The second time this topic came up, the discussion was about if Mr. Jackson had testified, there would have been more clarity as to where they could possibly give him a lesser charge, but because Mr. Jackson did not testify, he must be guilty.  Some of the jurors also stated that if Mr. Jackson were

6

innocent he would have testified, and a majority of the jurors expressed agreement, for instance, by their nodding heads."

D.R. also stated that the "topic of Mr. Jackson not testifying came up at least twice, including when the alternate juror came into deliberate" and that the foreperson did not stop the discussion.

### 2. Jurors' Testimony

#### i. L.I.

At the evidentiary hearing, L.I. testified that the topic of Jackson not testifying came up approximately four times during deliberations. One of these times was when the alternate juror was seated. L.I. did not hear the foreperson ever telling the jury to stop these discussions. He did not recall how long the discussions went on each time, but recalled that there were "multiple interjections" by the jurors each time. The "big question" during these discussions pertained to the contents in Jackson's backpack and the reason he went back to the park. With respect to the two declarations L.I. signed at different times, the trial court confirmed with L.I. that his recollection was better earlier in time.

During the trial court's examination of L.I., the court looked back at the statement made in L.I.'s first declaration that he would have voted for manslaughter if there was more proof regarding the contents of Jackson's backpack. The court then explained how it was interpreting L.I.'s present testimony, that "[o]verall this was a discussion people were getting in arguments saying maybe this is manslaughter rather than murder, someone else said for it to be manslaughter you need provocation, or if you need manslaughter you need heat of passion, you need these things, he didn't give you, didn't testify, so he didn't offer those things. Something to that effect?" L.I. responded, "Yes. And I don't believe that there was any evidence that

was brought of that issue either." L.I. then confirmed, consistent with what was in his second declaration, that he heard a juror say that Jackson would have testified if he was innocent. L.I. recalled that at least on one occasion, it was brought up that the jurors were not supposed to consider Jackson's failure to testify to determine the outcome of the verdict.

### ii. N.U.

N.U. testified that the topic of Jackson's failure to testify came up in the context of the jury deciding between murder and manslaughter. She confirmed that she, L.I., D.R., and the alternate juror all brought up why they were not hearing from him. She also recalled Juror No. 12 commenting that "since he's not testifying he must be guilty." This comment was made later on during deliberations in response to the alternate juror asking why Jackson did not testify. N.U. recalled that the other jurors then said, "you can't assume that. There may be other factors that are contributing to him not testifying." But N.U. confirmed that she did not instruct the jury that they shouldn't consider Jackson's failure to testify because she was also wondering why he didn't testify. She added, "We were told that we need to deal with what we have in front of us. And that's what we were doing."

During its examination of N.U., the trial court again highlighted the difference between "looking for evidence to help you fill in the blanks as you were answering those different questions" and "creating evidence" of guilt based on Jackson's failure to testify. The court asked N.U. whether the jurors were discussing his failure to testify in the context of the latter category. N.U. responded, "No, it wasn't that. We didn't [] get a picture who Mr. Jackson was. What was the situation when he went back across the street, you know, there were holes in the story that we could not honestly answer. It seems as if the jury were in a rush, there was no compassion,

8

there was no empathy, there was no putting themselves in Mr. Jackson's shoes." N.U. further testified that there were questions regarding what the victim was doing with Jackson's belongings, and that the jurors "weren't able to hear Mr. Jackson say what he was going through at that point in time" and that there were holes "because we didn't hear the whole story from him."

### iii. D.R.

D.R. testified that the first time the topic of Jackson's failure to testify was brought up, the jurors "were basically saying that maybe if he would have testified it maybe would have helped them and changing their verdict." The topic came up about two or three times. The second time it came up, the jurors discussed a lesser charge of manslaughter if Jackson had testified and provided more information. Juror No. 12 mentioned at this time that Jackson must be guilty since he didn't testify, or put differently, that he would have testified if he was innocent. The alternate juror was present when the topic was brought up this second time. D.R. confirmed that the foreperson did not initially stop these discussions, so the topic came up more than once. D.R. believes that the topic was brought up repeatedly because of Jurors No. 11 and 12, who were both quite vocal during deliberations.

The trial court did not have any follow up questions for D.R.

### iv. Jurors Called by the Prosecution

The prosecution called two other jurors (A.C. and J.B-M.) to testify. A.C. testified that she did not recall any discussions during deliberations about wishing Jackson had testified or that he should have testified. J.B-M similarly testified that she did not recall any discussions during deliberations regarding wanting to hear Jackson testify.

The trial court did not find A.C. or J.B-M.'s testimony meaningful.

9

### D. Denial of Second Motion for New Trial

The trial court denied Jackson's request for a new trial at the conclusion of the evidentiary hearing. The court first commented that it was "deeply troubled by [the new declarations] and the differentiating testimony of these three witnesses today, as opposed to their declarations at the time of the new trial motion." The court stated, "Now, the obvious differences . . . are statements suggesting that these jurors heard others say specific inculpatory statements, that Mr. Jackson was guilty based on his alleged failure to testify. For purposes of this hearing, I don't find any of those statements credible." The court commented that the statements were "clearly not close in time to proximity to the initial statements that they were originally given" and based on the similar language in the new declarations, "involves some suggestibility, maybe something worse." Defense counsel objected to this comment and argued that it reflected bias on the court's part.

The trial court ultimately concluded that the jurors' discussions "were aspirational"—wishing for more evidence of Jackson's mental state—as opposed to deciding that he was guilty based on his failure to testify. The court explained that since there was no question that Jackson was the one who stabbed the victim, "the question is this more subtle issue of when you've got lessors and when the jurors are specifically instructed to consider evidence of the defendant's state of mind." The court held, "I don't find there's a reasonable probability of actual harm. I don't find there are any express inferences of guilt, I find that these statements ultimately were more aspirational than inculpatory."

Jackson now appeals.

10

## 1. *Standard of Review*

"The trial court is vested with broad discretion to act upon a motion for new trial. [Citation.] When the motion is based upon juror misconduct, the reviewing court should accept the trial court's factual findings and credibility determinations if they are supported by substantial evidence, but must exercise its independent judgment to determine whether any misconduct was prejudicial." (*People v. Dykes* (2009) 46 Cal.4th 731, 809.)

"The power to judge the credibility of witnesses and to resolve conflicts in the testimony is vested in the trial court, and its findings of fact, express or implied, must be upheld if supported by substantial evidence." (*In re Carpenter* (1995) 9 Cal.4th 634, 646.) "Moreover, so long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of a witness even though the witness is uncontradicted. [Citations.] Consequently, the testimony of a witness which has been rejected by the trier of fact cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.)

## 2. *The Trial Court Did Not Commit Prejudicial Judicial Misconduct*

Jackson first argues that the trial court exhibited bias and partiality during the evidentiary hearing, and that its ruling therefore should not be afforded deference on appeal. In support of this argument, he points to the trial court's "self-serving questioning" of the jurors, its "unreasonable rejection of the three jurors' testimony on the same point," and its accusations against defense counsel. We disagree, and further note that in any case, although credibility determinations are afforded deference on appeal, we

11

review de novo whether any misconduct was prejudicial.  (*People v. Dykes, supra,* 46 Cal.4th at p. 809.)

With respect to the court's questioning of the jurors, Evidence Code section 775 permits the trial court to "call witnesses and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party."  It is well recognized "that it is not merely the right but the duty of a trial judge to see that the evidence is fully developed before the trier of fact and assure that ambiguities and conflicts in the evidence are resolved insofar as possible."  (*People v. Carlucci* (1979) 23 Cal.3d 249, 255.)  The ability of the trial judge to question witnesses applies not only in cases tried to a jury but also when the court is sitting as the fact finder.  (*Ibid.*)

Here, the trial court did not act impermissibly by examining the jurors after counsel completed their direct and cross-examinations of them.  In remanding the matter, this court emphasized that the record was not clear as to whether the subject discussion "indicates that the jurors drew adverse inferences therefrom or, alternatively, reflected their assessment of the state of the evidence as to the charged crimes and defenses."  The trial court accordingly homed in on this distinction and questioned the jurors regarding it because it was central to whether the jury drew any adverse inferences of guilt based on Jackson's decision not to testify.  We find no judicial misconduct or bias.

Jackson also argues that the trial court showed bias and partiality in its "unreasonable rejection of the three jurors' testimony on the same point." This argument refers to the trial court's ruling that it did not find the inculpatory statements contained in the jurors' second declarations credible.

"[T]he credibility of witnesses is generally a matter for the trier of fact to resolve." (*Beck Development Co. v. Southern Pacific Transportation Co., supra*, 44 Cal.App.4th at p. 1204.) "[S]o long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of a witness *even though the witness is uncontradicted*." (*Ibid.*, italics added.)

The jurors' statements regarding guilt or innocence were uncontradicted by other witnesses, particularly because the trial court found that the testimony of A.C. and J.B-M. was not meaningful. The trial court did, however, find the statements contradicted by the jurors' own earlier declarations since they did not mention culpability in connection with the discussions regarding Jackson's failure to testify. The trial court also found the statements not credible based on the passage of time, since they were made approximately three years after trial concluded. In this light, we cannot say that the trial court's decision not to credit statements in the second round of declarations was arbitrary or irrational.

Relatedly, however, Jackson argues that the trial court's bias was revealed by its accusation against defense counsel that the inclusion of the inculpatory statements contained in the jurors' second declarations "involves some suggestibility, maybe something worse. And if someone were to look at the similar language in the manner of design in which all of these declarations were drafted, they may opt to think it's something worse."

" 'A criminal defendant has due process rights under both the state and federal Constitutions to be tried by an impartial judge.' " (*People v. Peoples* (2016) 62 Cal.4th 718, 788, quoting *People v. Cowan* (2010) 50 Cal.4th 401, 455.) Moreover, as the court in *Peoples* pointed out, canon 3B(4) of the California Code of Judicial Ethics states that " 'A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others

13

with whom the judge deals in an official capacity, and shall require similar conduct of lawyers and of all staff and court personnel under the judge's direction and control.' " (*People v. Peoples*, *supra*, at p. 789.) A trial court " 'commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression that it is allying itself with the prosecution.' " (*People v. Sturm* (2006) 37 Cal.4th 1218, 1233.) While *Sturm* and *Peoples* involved remarks made in the presence of the jury, here the trial court was acting as the finder of fact, and plainly it is important in that context too for courts to avoid comments that, at a minimum, could create the appearance of a lack of impartiality.

The Attorney General describes the trial court's comment implying improper or unethical conduct by defense counsel as "at best, unnecessary" because "the court had ample reasons for finding the later statements not to be credible without questioning how counsel procured them." The Attorney General also suggests that the court was "frustrated," and while part of that frustration was directed toward defense counsel, the court was also frustrated with itself for having failed to make an adequate evidentiary record on the claim of juror misconduct when it was raised in the initial new trial motion. Indeed, that was the error on the basis of which this court previously reversed and remanded.

We agree with the Attorney General that the trial court's comment impugning defense counsel was at best unnecessary, and we find nothing in the record to suggest that the jurors' subsequent declarations and hearing testimony were the product of improper or unethical conduct by defense counsel. Moreover, given the seriousness of the accusation, it is a more troubling misstep than the kind of discourteousness or impatience that might

14

be born of frustration. When such an accusation is made without an adequate evidentiary foundation, it can create the appearance of bias. (Cf. *Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, 1024, disapproved of on another ground by *Curle v. Superior Court* (2001) 24 Cal.4th 1057 [trial court's "derogatory and apparently unfounded statements concerning counsel," along with other factors, warranted that further proceedings take place before a different judge on remand].) However, to prevail on a due process claim, a defendant must make a "heightened showing of a probability, rather than the mere appearance, of actual bias." (*People v. Freeman* (2010) 47 Cal.4th 993, 1006; see *People v. Ng* (2022) 13 Cal.5th 448, 571 [appellate court's decision in *Ng v. Superior Court* (1997) 52 Cal.App.4th 1010 did not establish actual bias by the trial judge].) Jackson has not made the requisite showing. As discussed above, the trial court expressed rational, nonarbitrary reasons for declining to credit the jurors' subsequent declarations and testimony, and in this context we cannot conclude that the court's suspicion about the role of defense counsel was the cause, rather than the effect, of its credibility determination. "Mere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)[4]

---

[4] In *Guerra*, the trial judge stated, among other things, that defense counsel's prior writ petition was " 'full of specious statements,' " and after counsel disagreed with that characterization, responded, " 'you are so intellectually dishonest that if you turned around fast, you'd screw yourself into the ground.' " (*People v. Guerra, supra,* 37 Cal.4th 1067, 1110.) After a recess, which followed some additional hostile comments, the trial judge told counsel that "he had considered whether this incident would cause him to be biased against defendant and ultimately decided he could give defendant a fair trial." (*Ibid.*) While such a corrective statement is absent from the record

Thus, while we disapprove of the trial court's comment, we reject Jackson's claim that it establishes a probability of actual bias.

Lastly, we also find no merit to the argument in Jackson's supplemental opening brief that the trial court failed on remand to follow our order to consider additional evidence of misconduct. The court considered the new juror declarations, heard the testimony of the jurors at the evidentiary hearing, and ultimately did not find that the misconduct resulted in prejudice. That the court did not find certain testimony or statements credible does not mean that it refused to consider them.

### 3. The Trial Court Did Not Err in Denying the Motion for New Trial

This court issued a limited remand in Jackson's prior appeal because the record was "not clear as to the scope of the alleged misconduct and whether the discussion of defendant's decision not to testify indicates that the jurors drew adverse inferences therefrom or, alternatively, reflected their assessment of the state of the evidence as to the charged crimes and defenses." (*Jackson I*, *supra*, A151120.) We also noted that the record was silent as to the duration of the discussions regarding Jackson's failure to testify and whether the foreperson admonished the jurors when the topic came up. (*Ibid.*) We therefore instructed the trial court to "explore the *Lavender* rebuttal factors to assess the potential prejudice arising from the misconduct." (*Ibid.*) The trial court did so and we find no error in its ruling.

#### i.      *Lavender Rebuttal Factors*

In *Lavender*, *supra*, 60 Cal.4th at p. 687, our high court explained that misconduct occurred when jurors during deliberations mentioned the defendants' decision not to testify. "Such misconduct, in turn, gave rise to a

---

here, Jackson has not shown that the trial court's hostility to defense counsel rendered it unable to adjudicate his case impartially.

16

presumption of prejudice, which may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm resulting from the misconduct." (*Ibid.*)

In *People v. Solorio* (2017) 17 Cal.App.5th 398 (*Solorio*), the court identified three factors that were considered in *Lavender* to rebut the presumption of prejudice. "The first rebuttal factor considers whether jurors drew adverse inferences of guilt from defendant's decision not to testify. [Citation.] Comments of mere 'wonderment and curiosity' are normally innocuous." (*Id.* at p. 409.) Adverse inferences are not drawn when jurors "merely expressed regret that defendant had not testified, because such testimony might have assisted the jurors in understanding him better." (*People v. Leonard* (2007) 40 Cal.4th 1370, 1425.) Such statements are distinguishable from those indicating that jurors punished a defendant for not testifying or drew negative inferences from it. (*Ibid.*)

"The second rebuttal factor considers the length of discussion about the topic." (*Solorio, supra,* 17 Cal.App.5th at p. 410.) " 'Transitory comments' about the topic are usually innocuous, 'particularly when a comment stands alone without any further discussion.' [Citations.] The fact that only a few jurors recall any comment on the topic may tend to 'indicate[] that the discussion was not of any length or significance.' " (*Ibid.*)

"The third rebuttal factor—the crux of *Lavender*—considers whether jurors were reminded not to consider the defendant's decision not to testify. [Citation.] If the foreperson promptly reminded jurors when the improper statement was made, that would '(in the absence of objective evidence to the contrary) . . . constitute strong evidence to rebut the presumption of prejudice.' " (*Solorio, supra,* 17 Cal.App.5th at p. 410.) This third factor was

the central issue in *Lavender, supra*, 60 Cal.4th 679 as our high court there found the presumption of prejudice could be rebutted even where the jurors' discussion of a defendant's failure to testify went beyond mere curiosity, if there is also evidence that the foreperson admonished the jurors not to consider it. (*Id.* at p. 687.)

### ii.   Analysis

Here, the parties do not dispute that the jurors discussed Jackson's failure to testify at various points during deliberations, including when the alternate juror was seated. And N.U., the foreperson, testified that she did not admonish the jurors not to consider his failure to testify, though on at least one occasion, other jurors brought up that they were not supposed to consider the topic in deciding the verdict. The critical issue then, is the first *Lavender* rebuttal factor—whether the jurors drew an adverse inference of guilt from Jackson's decision not to testify. Based on our independent review of the record, we do not find that the misconduct resulted in a reasonable probability of harm to Jackson.

As the trial court noted, this was not a "who done it" case. There was no dispute that Jackson was guilty of stabbing the victim. On the first day of deliberations, the jurors were split only as to whether he should be convicted of second degree murder or voluntary manslaughter.[5] As the trial court

---

[5] By itself, the fact that there was no dispute that Jackson stabbed the victim does not mean that there was no prejudice. In *Solorio*, for example, the issue was whether the defendant acted in self-defense, and the court reversed the trial court's finding of no prejudice where the trial court credited a juror's testimony that a group of six or seven jurors repeatedly discussed the defendant's decision not to testify. (*Solorio, supra,* 17 Cal.App.5th at pp. 404–405.) The Court of Appeal concluded, based on the juror's declaration, that jurors drew the inference that the defendant was guilty of murder from his failure to testify, where the juror stated "Solorio did not

18

pointed out, defense counsel had raised provocation or heat of passion as issues during the trial to support manslaughter instead of murder.  Though the ultimate burden of proof remained with the prosecution to prove its case, some jurors apparently believed that they lacked evidence from the defense that would be necessary to conclude that Jackson was sufficiently provoked, or that he acted in the heat of passion, to warrant convicting him of something less than murder.  All three jurors testified at the evidentiary hearing that there were unanswered questions regarding what he had in his backpack, whether the backpack was everything he owned, and what his state of mind was when he went back to the park, presumably to retrieve it. It was in this context that the jurors discussed the absence of testimony from Jackson, suggesting that they were seeking evidence of mitigation through such testimony, not inferring that he was guilty based on the lack thereof.

*People v. Brooks* (2017) 3 Cal.5th 1 is analogous.  There, the defendant was charged with murder.  At trial, the defense did not dispute that the defendant killed the victim, but "presented evidence to support the theory that defendant was guilty of heat of passion voluntary manslaughter, not murder." (*Id*. at p. 23.)  The defendant did not testify.  On the second day of deliberations, the jury was deadlocked.  (*Id*. at p. 92.)  The trial court instructed the jurors to continue deliberating and to identify what would assist them.  The jury responded with a request to hear from the defendant, which the trial court denied.  (*Id*. at p. 93.)

On appeal, the court inferred from this request that the jurors discussed the defendant's failure to testify during deliberations, which was

---

testify because 'he knew he "did it." ' " (*Id*. at p. 409.)  Here, by contrast, the trial court did not credit testimony indicating that jurors drew an adverse inference.

19

misconduct that gave rise to a presumption of prejudice. (*People v. Brooks, supra,* 3 Cal.5th at p. 93.) However, the court did not find that the jury drew any adverse inferences of guilt from the defendant's failure to testify. (*Id.* at pp. 93–94.) The court held that "an examination of the record as a whole strongly suggests that the jury's request to hear from defendant was a request for evidence in mitigation that would help the defense case . . . it cannot be inferred from that request that the jurors had considered defendant's failure to testify as evidence in aggravation or for the purpose of allaying any lingering doubt regarding his guilt." (*Id.* at p. 94.)

Likewise, here, there was no question, and Jackson himself did not dispute, that he killed the victim. And unlike in *Brooks*, we know from the jurors' declarations and testimony that they were looking for mitigating evidence by way of testimony from Jackson. The jurors' prior declarations made clear that on the first day of deliberations, all of the jurors determined that Jackson was guilty of the act but were split between murder and manslaughter. All three jurors stated they would have voted for manslaughter *if* they had more information about the contents of his backpack and whether it was all he owned, because it would have supported the defense's argument that he was provoked. In so reasoning, the jurors did not infer that Jackson was guilty because he did not testify, but rather expressed their view that there was insufficient mitigating evidence to support a lesser conviction. The jurors' testimony at the evidentiary hearing also supported the trial court's conclusion that Jackson's testimony (or lack thereof) was discussed to help fill in missing blanks to questions the jurors had regarding the contents of his backpack and his state of mind as potential mitigating evidence. Accepting the trial court's credibility determinations

20

regarding what occurred during the jury's deliberations, we cannot conclude that the misconduct resulted in a reasonable probability of harm.

### 4. *Defendant's Ineffective Assistance of Counsel Claims Lack Merit*

In his supplemental opening brief, Jackson asserts that he was denied the effective assistance of counsel. He argues that his counsel (1) failed to timely and adequately research the law and investigate the facts fully in advance of the first motion for new trial; and (2) failed to object or request recusal of the trial judge despite the judge's conduct in questioning the jurors and impugning defense counsel.

A defendant who contends he received ineffective assistance has the burden of proving that: (1) trial counsel's performance fell below an objective standard of reasonableness when measured by prevailing norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215–218.) An appellant who alleges ineffective assistance on direct appeal bears an especially heavy burden of proof: " '[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

First, any claim of ineffective assistance with respect to the initial motion for new trial is waived. "Waiver precludes successive appeals based on issues ripe for consideration in the prior appeal and not brought in that proceeding." (*People v. Jordan* (2018) 21 Cal.App.5th 1136, 1143.) Indeed, "California law prohibits a defendant from raising contentions in a piecemeal fashion by successive proceedings. When a defendant had an opportunity to

21

challenge his or her sentence in an earlier appeal and failed to do so, he or she may not belatedly raise the same issue in a later appeal or a collateral attack on the judgment, absent good cause." (*Ibid*.) Here, the claim of ineffective assistance was ripe for consideration in Jackson's prior appeal but was not raised. He cannot raise it now following this court's limited remand.

Second, any claim of ineffective assistance with respect to trial counsel's failure to object or request recusal at the evidentiary hearing lacks merit. Jackson argues that trial counsel should have objected when the trial court took on an "adversarial role" through its extensive leading questions of the jurors and its summary of the record based on its own interpretation and analysis. As discussed above, however, the court's questioning of witnesses was not improper. Given the passage of time between the jurors' first and second declarations, as well as the critical distinction to be made between statements that reflect an adverse inference of guilt and those that do not, it was not misconduct for the court to seek clarification of this point with the jurors during its examination.[6]

We likewise cannot conclude that trial counsel rendered ineffective assistance by failing to request the trial judge's recusal after he accused her

---

[6] Jackson cites *In re Martin* (1977) 71 Cal.App.3d 472 in support of his argument, but we find that case readily distinguishable. There, the trial judge presided over a rehearing on contempt charges against petitioner and stated at the outset that he felt deceived by the petitioner and believed that his "original impression was correct as things now stand." (*Id*. at p. 481.) The court found that the judge should have recused himself from trying the contempt charge at the rehearing because his comments indicated bias and a presumption of guilt against petitioner. Moreover, because the contempt charge concerned representations that petitioner had made directly to the judge, he had "the very kind of subjective involvement which required a recusal" and effectively became a witness against petitioner. (*Id*. at p. 482.) None of those features are present here.

of unethical conduct. Although "[b]ias or prejudice toward a lawyer in the proceeding may be grounds for disqualification" (Code Civ. Proc., § 170.1, subd. (a)(6)(B)), it is not grounds for disqualification that, subject to exceptions not relevant here, the judge has "expressed a view on a legal or factual issue presented in the proceeding" (*id.* § 170.2, subd. (b)). While we have disapproved of the trial court's accusation, it was connected to the credibility determination it made about the jurors' new declarations and testimony. As in *Guerra*, where the trial judge concluded that his accusations of dishonesty against defense counsel did not render him biased against the defendant or compromise the defendant's right to a fair trial (*People v. Guerra, supra,* 37 Cal.4th at p. 1110), here we cannot say that the trial court would have granted a motion for disqualification, or that it would have been required to do so. (See *People v. Smithey* (1999) 20 Cal.4th 936, 1012 [rejecting ineffective assistance claim based on failure to seek disqualification of trial judge and move for new trial "because the appellate record does not establish that counsel performed deficiently by failing to make such motions, or that such motions likely would have been granted"].)

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
WHITMAN, J.*

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23